JENNINGS, Plaintiff in error, vs. THE STATE, Defendant in error.

*December 18, 1907—January 8, 1908.*

*Criminal law and practice: Trial: What constitutes a jury: Constitutional law: Right of accused to waive trial by twelve jurors.*

1. The jury contemplated by secs. 7, 8, art. I, Const., is a common-law jury of twelve jurors.

2. In a criminal proceeding on an information charging abandonment of his wife by the accused and failure to support her, the accused pleaded not guilty, and, a jury of twelve having been impaneled, the trial of the accused proceeded to a point where the evidence had been received and the arguments of counsel completed, when the court adjourned to the following day. On the reconvening of the court one juror of the panel was missing, and, upon stipulation of the accused, the cause was submitted to the remaining eleven jurymen upon instructions then given by the court. *Held*, in the absence of a statute conferring such right, that the consent of the accused to waive the right to be tried by the full number of twelve jurors was ineffectual and rendered the verdict and judgment erroneous.

    MARSHALL, J., dissents.

ERROR to review a judgment of the circuit court for Fond du Lac county: CHESTER A. FOWLER, Circuit Judge. *Reversed.*

Plaintiff in error pleaded not guilty to an information charging him with abandonment of and failure to support his wife. A jury of twelve men was duly impaneled and sworn to try the case. When all the evidence had been received and the counsel had concluded their arguments the

court adjourned until the following morning. When court opened in the morning one of the jurors failed to appear and after search he could not be found, and the judge thereupon made the following statement:

"One of the jurors, Mr. Pride, is not here. It is half an hour after the time that the jurors were directed to be present this morning. Mr. Pride not being in his seat at the time we met, I directed the sheriff to find him. The sheriff has been to his home and has telephoned the clerk, so the clerk informs me; he is not there and has not been there since yesterday, I believe, at dinner. . . . Of course the defendant has the right to have his case tried by a jury of twelve men. It is a right he may waive, however. Under the circumstances, gentlemen, do you prefer to have the jury charged and have the case submitted—"

Mr. McKenna, attorney for defendant: "We desire to have the case submitted to the eleven gentlemen sitting here."

By the court: "Let the stipulation be made of record, and the defendant being in court I think we will proceed and submit this case to the eleven jurors on the stand."

The court then charged the jury and submitted the case to the eleven jurors. They returned a verdict of guilty. This was received and recorded and the jury discharged. Plaintiff in error moved to set aside the verdict because only eleven of the jurymen sworn in the action participated in the verdict, because the verdict was rendered by only eleven jurors, and because this did not constitute a lawful jury. This motion was denied and the court rendered judgment on the verdict. Plaintiff in error sued out this writ of error to reverse the judgment.

*R. D. Tillotson,* for the plaintiff in error.

For the defendant in error there was a brief by the *Attorney General* and *A. C. Titus,* assistant attorney general, and oral argument by *Mr. Titus.*

Siebecker, J. The single question presented is, Has the accused, after plea of not guilty to the charge preferred in

the information, under the provisions of secs. 7 and 8, art. I, of the state constitution, the right to waive trial by a jury of twelve persons? The question was considered by this court in two cases—*State v. Lockwood*, 43 Wis. 403, and *In re Staff*, 63 Wis. 285, 23 N. W. 587. In the former case the accused waived the jury entirely, the case was submitted to the court upon the evidence, and the court found him guilty. In passing upon the right of the accused in criminal cases it was there declared: "A plea of not guilty to an information or indictment for crime, whether felony or misdemeanor, puts the accused upon the country, and can be tried by a jury only," and that this right "is secured by the constitution, upon a principle of public policy, and cannot be waived." It is unquestioned that a common-law jury of twelve jurors constitutes the jury contemplated by the constitution. It has been held that any less number is not such a jury. See *Norval v. Rice,* 2 Wis. 22; *May v. M. & M. R. Co.* 3 Wis. 219. It seems necessarily to follow that if a person on trial in a criminal case has no power to waive a jury he has no right to be tried by a less number than a common-law jury of twelve, and when he puts himself on the country it requires a jury of twelve to comply with the demands of the constitution. The fact that the jury in the instant case had the required number of twelve up to the stage in the trial when the cause was to be submitted to them under the instructions of the court cannot operate to satisfy the constitutional demand. At this point the trial was incomplete, for the very essential duty of having the jury deliberate upon the evidence and agree upon a verdict respecting defendant's guilt or innocence remained unperformed. Without the verdict of a jury of twelve it cannot be said to be a verdict of the jury required by the constitution. Such a verdict is illegal and insufficient to support a judgment.

Further consideration of this constitutional right was had in the *Staff Case,* wherein the decision of the *Lockwood Case*

was adhered to, but the court determined that this construction of the constitutional provision did not deprive the legislature of the power to permit a person accused of crime to waive a jury when put upon trial. It is there said: "In the absence of a statute conferring it [such right], there may be some good reason resting in considerations of public policy . . . why he should not have such privilege;" but it is held that legislation conferring such privilege is a declaration of a legislative change in such policy, and "that the public policy which stood in the way of an effectual waiver of a jury by the accused in a criminal case is not so inherent in the form and framework of our government as to place it beyond the reach of legislative interference, but that it is the subject of legislative control." We deem these cases controlling upon the question presented by the plaintiff in error. In view of this interpretation of the constitutional provision on the question and the legislative power in respect thereto, we are of opinion that this court should adhere to the doctrine of these cases. If it is deemed good public policy to extend the privilege of waiving a jury in criminal cases, such policy should find expression in appropriate legislative action. Under the existing law the consent of the plaintiff in error to waive the right to be tried by the full number of twelve jurors was ineffectual and rendered the verdict and judgment erroneous. The situation demands a reversal of the judgment and a setting aside of the verdict received and entered as the verdict in the case.

*By the Court.*—Judgment reversed, and the cause remanded to the lower court for further proceedings according to law.

MARSHALL, J. (*dissenting*). I do not think *State v. Lockwood,* 43 Wis. 403, necessarily rules this case on the question of whether it was competent for the accused, under the circumstances, to waive a full trial before twelve jurors.

The constitution provides that the accused shall enjoy several specified rights, and among them the right "to a speedy public trial by an impartial jury of the county or district wherein the offense shall have been committed; which county or district shall have been previously ascertained by law." Sec. 7, art. I, Const.

This court has held that the constitutional guaranty relates to privileges and in every instance where competency to waive one of them has been involved the conclusion has been in the affirmative, except that of a trial by a jury of twelve men. *In re Staff*, 63 Wis. 285, 23 N. W. 587. Even they need not necessarily be of "the county wherein the offense shall have been committed" (*Bennett v. State*, 57 Wis. 69, 14 N. W. 912), although the guaranty as to that is as unmistakable as the one in relation to a "public trial by an impartial jury." The trial need not be by twelve competent jurors, since the accused may waive his constitutional privilege in that regard. *State v. Vogel*, 22 Wis. 471; *Flynn v. State*, 97 Wis. 44, 72 N. W. 373; *In re Roszcynialla*, 99 Wis. 534, 75 N. W. 167; *Emery v. State*, 101 Wis. 627, 645, 78 N. W. 145; *Cornell v. State*, 104 Wis. 527, 532, 80 N. W. 745; *In re Shinski*, 125 Wis. 280, 104 N. W. 86; *Schwantes v. State*, 127 Wis. 160, 174, 106 N. W. 237; *Stoddard v. State*, 132 Wis. 520, 112 N. W. 453.

From the language of Mr. Justice Lyon in *In re Staff*, *supra*, we may safely assume that, had the court then been called upon to deal with the situation we now have, it would unhesitatingly have sustained the waiver. "It is not strange," said Mr. Justice Lyon, "that the supreme court of Iowa, untrammeled by previous adverse decisions in that state," so held. *State v. Kaufman*, 51 Iowa, 578, 2 N. W. 275. It is interesting to note that the decision in that case, sustaining a conviction by eleven jurors, did not restrain the Iowa court from holding later, in harmony with *State v. Lockwood*, *supra*, that a waiver of a jury trial in a criminal case is

not permissible (*State v. Carman*, 63 Iowa, 130, 18 N. W. 691), while still later *State v. Kaufman* was affirmed, the waiver of a jury trial being distinguished from consent to conclude a trial with eleven jurors which was commenced with twelve.

The effect of *In re Staff*, as I view it, is to overrule *State v. Lockwood*, or at least to show an intention to limit it to the precise situation with which it dealt. In the later case it was held that by legislative authorization a jury trial may be waived. Since if the right or privilege of trial by jury is one which, under the constitution, the accused must enjoy whether he so wills or not, unless he pleads guilty, it is illogical to conclude that the legislature can order otherwise. To say that whereas in *State v. Lockwood* it was held that an accused person must be tried by a jury, if tried at all, because the constitution so commands, yet he may be otherwise tried if he consents and the legislature permits, is to put the latter above the former. So, stripped of the illogical ground upon which *In re Staff* rests, it quite clearly runs directly counter to *State v. Lockwood*. To extend the latter further than the exact situation then in hand, that of an entire waiver of a jury trial, is to overlook, as it seems, the numerous cases holding that want of a constitutional jury, one of twelve competent jurors, in a criminal case is not jurisdictional and, therefore, may be waived, and overlook the broad scope of the doctrine of waiver as applied to mere privileges.

. The trend of modern judicial thought is in the direction of more and more giving controlling significance on appeal to appreciable substantials in the trial of causes, putting aside as immaterial all other considerations, where that course can be pursued without violating any plain command in the fundamental law or act of the legislature within the scope of its authority; the sayings of judges and of lawyers, now and then, to the contrary notwithstanding. Such say-

ings are, as it seems, not only unwarranted but are exceed-
ingly unfortunate, as they convey a false impression very
prejudicial to the administration of justice in the public esti-
mation.

One reads with astonishment the suggestion coming from
those whom one has a right to assume know whereof they
speak and to assume that they would not speak at all other-
wise than considerately, that appellate courts are prone to
reverse judgments for mere trifling and technical errors;
"that if a trial court fall into a single error no matter how
trivial, the appellate court will order a new trial of the case
almost automatically;" that reversals are commonly based
upon erroneous admissions of immaterial and irrelevant tes-
timony which is not prejudicial. One can but wonder at
the public voicing of such sentiments when the fact is that
appellate courts in most jurisdictions, especially is that true
here, act upon the very opposite theory. That will be found
evidenced in a multitude of cases.

In *Mauch v. Hartford,* 112 Wis. 41, 87 N. W. 816, the
position of the court was thus unmistakably stated:

"Mere errors should not be permitted to disturb the course
of justice." "Regardless of how numerous and inexcusable
may be the errors committed on the trial of a cause, the judg-
ment rendered must be affirmed on appeal, unless it appears
probable that the substantial rights of the unsuccessful party
were thereby injuriously affected."

And again in *Washburn v. Washburn W. W. Co.* 120
Wis. 575, 588, 98 N. W. 539, 543:

"The duty devolves upon us not to allow justice to mis-
carry if it can be prevented by disregarding errors and de-
fects, however palpable, numerous, or inexcusable they may
be, which do not affect substantial rights."

That doctrine is most firmly entrenched in the jurispru-
dence of this state and is uniformly applied to criminal as
well as to civil cases.

In the light of the foregoing it seems clear that if the act of permitting, by assent of the accused, the trial to proceed to a finality notwithstanding absence of one of the jurors, should be regarded as an error, it was one not prejudicial to the accused and one which he should not be permitted to take advantage of. I am unable to see in *State v. Lockwood,* 43 Wis. 403, any forceful reason why in the light of today, in view of the uniform course of limiting the scope and spirit of that case to its precise facts, the court should feel constrained to apply it to the situation in hand.

As evidence of the tendency of the court to break away from the ancient notion that a constitutional privilege of an accused person in relation to his trial is obligatory upon him as regards its enjoyment, witness that where in *French v. State,* 85 Wis. 400, 55 N. W. 566, it was said that the accused cannot waive his right to be present during the whole trial, "it was his constitutional right, that he may not waive," facing a situation in *Stoddard v. State,* 132 Wis. 520, 112 N. W. 453, where that doctrine would have worked a reversal, the court, in harmony with the general trend of its adjudications, held that such right can be waived and is presumed to have been waived by the circumstance of the accused being voluntarily absent.

I cannot escape the conclusion that the decision from which I now dissent is a backward step, liable to seemingly afford some justification for the idea that the court is prone to hinge reversals upon mere technicalities. I say that with all due deference to my brethren, whom I well know are not inclined to indulge in any retrograde movement in respect to grounding judicial action upon substantials only.

To extend the doctrine of waiver, if necessary to meet the situation now presented, and I must insist that no extension is required, would but give added significance to the settled policy that no judgment shall be disturbed for error which does not prejudice the substantial rights of the adverse

party—sec. 2829, Stats. (1898),—a doctrine so necessary to the speedy, economical, and certain attainment of justice.

I cannot agree to the seemingly backward step, since the contrary is in harmony with our recent decisions, as I view them, with our settled legislative and judicial policy as well, is consistent with the constitutional command, and supported by ample authority elsewhere. *State v. Kaufman,* 51 Iowa, 578, 2 N. W. 275; *State v. Grossheim,* 79 Iowa, 75, 44 N. W. 541; *State v. Sackett,* 39 Minn. 69, 38 N. W. 773; *Comm. v. Dailey,* 12 Cush. 80; *Bank of Columbia v. Okely,* 4 Wheat. 235; *U. S. v. Rathbone,* 2 Paine C. C. 578, Fed. Cas. No. 16,121.

I cannot better round out this opinion than by quoting from *Comm. v. Dailey, supra,* the reasoning of that eminent judge, Chief Justice Shaw, sustaining the contention of that no less eminent lawyer, Rufus Choate, attorney general for the state of Massachusetts, respecting the precise situation we have here:

"Supposing the law has duly provided that a jury of twelve men shall be impaneled to try an indictment, the evidence is all in, and a juror dies or becomes insane, . . . whether it is legal for the accused to consent to proceed without the juror withdrawn; or to state the same question in a little different form, whether he may stipulate beforehand, on the record, that he will take no exception to such irregularity, and if he does, whether the court cannot legally act upon it, and carry such stipulation into effect. We think they can. . . . In the case supposed, the accused may have been successful in laying before the jury all his evidence, which he may fear he cannot again obtain. A long time may elapse before he can have another trial, and it is important to him to have an early decision, on many accounts. . . . In many points in the conduct of a trial, parties and their counsel, we think, may be safely allowed to judge as to what they will insist on and what they will waive. Having so done, and taken their chance for a verdict, it would be inconsistent with ordinary good faith and fair dealing to turn round and insist on legal exceptions which they had pledged themselves

to the court that they would not take. . . . Supposing it an irregularity to take the verdict of eleven jurors without the consent of both parties, yet as it did not affect the jurisdiction of the court, the exception was one that the accused might waive; that having stipulated of record that he would take no exception to such irregularity, he is now precluded from taking it."