STATE of Wisconsin, Plaintiff-Respondent,

v.

Michael S. LEDGER, Defendant-Appellant.†

Court of Appeals

*No. 92-0750-CR. Submitted on briefs November 24, 1992.—Decided March 3, 1993.*

(Also reported in 499 N.W.2d 198.)

† Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *William J. Chandel* of *William J. Chandek & Associates* of Brookfield.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney general, and *Maureen McGlynn Flanagan,* assistant attorney general.

Before Nettesheim, P.J., Anderson and Snyder, JJ.

NETTESHEIM, P.J. Michael Ledger appeals from a judgment of conviction for masked armed robbery

as a party to the crime, contrary to secs. 939.05, 939.641 and 943.32(2), Stats., and from an order denying his motion for postconviction relief. Ledger's principal argument is that his right to a jury trial under the Wisconsin Constitution was violated when the parties stipulated to allow a thirteen-member jury panel to deliberate and render a verdict.[1] He also argues that statements obtained by the police after his arrest violated his sixth amendment right to counsel and that a voice identification lineup procedure was unconstitutionally violative of his right to due process and his sixth amendment right to counsel. We affirm.

On December 6, 1989, a masked armed robbery occurred at a Brookfield service station. Ledger was later arrested and charged with masked armed robbery as a party to the crime based upon information obtained from the victim and from Ledger's accomplice during the robbery.

By a pretrial motion, Ledger sought to suppress certain statements made by him to the police. He also sought to suppress the victim's voice identification obtained via a voice lineup procedure. The trial court denied both suppression requests.

At the opening of the trial, the trial court suggested that an additional juror be impaneled because of the anticipated length of the trial. The parties agreed. *See* secs. 972.04(1) and 805.08(2), Stats. The court also urged the parties to consider using the thirteen-member jury to deliberate and render a verdict. The court stated it would ask for the parties' position on the issue at the close of the evidence.

Before the case was submitted to the jury, the trial court revisited this question. The prosecutor and defense

---

[1] Following our certification of this issue, the Wisconsin Supreme Court declined to take jurisdiction over this appeal.

counsel mutually agreed to allow the thirteen-member jury to deliberate and render a verdict. In a personal colloquy with Ledger, the trial court explained the agreement and ensured that Ledger both understood and desired to have the thirteen-member jury deliberate his guilt or innocence. Ledger replied that he understood the agreement, that he had discussed the matter with his attorney, and that he wished to proceed with the thirteen-member jury.[2]

Pursuant to the parties' agreement, the thirteen-member jury deliberated and returned a verdict. The jury found Ledger guilty of masked armed robbery as a party to the crime. The court sentenced Ledger to twenty-five years imprisonment. After denial of his postconviction motions, Ledger brought this appeal.

---

[2] After the prosecutor and defense counsel agreed to the thirteen-member jury, the trial court's colloquy with Ledger was as follows:

> THE COURT: Mr. Ledger, under the statute, of course, you are entitled to have a jury of 12. What this would mean is that all 13 of the jurors who have heard the testimony will all be permitted to deliberate in this case, and then the jury as a whole, all 13 of them, will be required to decide this case unanimously. Do you understand that is the implication of what your attorney and the assistant district attorney wish to do?
>
> THE DEFENDANT: Yes.
>
> THE COURT: That is what you wish to do as well?
>
> THE DEFENDANT: Yes.
>
> THE COURT: You have had enough time to discuss this matter with Mr. Kuhary [your defense attorney]?
>
> THE DEFENDANT: Yes, I have.
>
> THE COURT: I will permit all 13 jurors to deliberate in this matter, and, of course, a unanimous verdict will be required.

Ledger claims that the use of a thirteen-member jury is not recognized by Wisconsin statutory law. Thus, he concludes that the use of the thirteen-member jury violated his right to a jury trial pursuant to the Wisconsin Constitution, art. I, sec. 7,[3] despite his agreement to the contrary.

■

Whether Ledger was denied a constitutional right is a question of constitutional fact that we review independently as a question of law. *State v. Dean*, 163 Wis. 2d 503, 511, 471 N.W.2d 310, 313-14 (Ct. App. 1991).

Ledger relies upon a series of Wisconsin Supreme Court decisions to support his argument that his right to a jury trial under the Wisconsin Constitution was violated when the parties stipulated to a thirteen-member jury panel. In *State v. Lockwood*, 43 Wis. 403 (1877), the supreme court held that the trial court was without jurisdiction to try a criminal case without a jury *even in the face of a jury waiver*. "The right of trial by jury," the court declared, "is secured by the constitution, upon a principle of public policy, and cannot be waived." *Id.* at 405.

Eight years later, in *In re Staff*, 63 Wis. 285, 294-95, 23 N.W. 587, 590-91 (1885), the supreme court departed from the absolute stance taken in *Lockwood* and upheld the constitutionality of the defendant's jury waiver.

---

[3] Article I, sec. 7 of the Wisconsin Constitution states in relevant part: "In all criminal prosecutions the accused shall enjoy the right . . . to a speedy public trial by an impartial jury of the county or district wherein the offense shall have been committed." No federal constitutional issue is presented because the right to a jury comprised precisely of twelve members is not an indispensable component of the sixth amendment right to a jury trial. *Williams v. Florida*, 399 U.S. 78, 102-03 (1970).

There, the defendant waived a jury trial in municipal court pursuant to a statute which recognized such a waiver in limited situations.[4] The court held that the defendant could constitutionally waive a jury trial *in those instances where the legislature had expressly provided for such a procedure. Id.* at 294–96, 23 N.W. at 590–91.

In a later case, *Jennings v. State*, 134 Wis. 307, 114 N.W. 492 (1908), however, the supreme court relied on *Lockwood* to support its holding that an accused cannot consent to a jury of less than twelve. The court reasoned that "[i]f it is deemed good public policy to extend the privilege of waiving a jury in criminal cases, such policy should find expression in appropriate legislative action." *Jennings*, 134 Wis. at 310, 114 N.W. at 493.

In 1911, the Wisconsin legislature enacted a statute which allowed a waiver of less than twelve jurors but not a waiver of a jury trial altogether.[5] Mindful of this fact, the supreme court ruled in *State v. Smith*, 184 Wis. 664, 672–73, 200 N.W. 638, 641 (1924), that the defendant could not waive a jury in full. The legislature responded

---

[4] The statute in *In re Staff*, 63 Wis. 285, 23 N.W. 587 (1885), was enacted by the Wisconsin legislature to reestablish a municipal court in Rock county. The statute provided in relevant part that "[a] jury trial in said court in criminal cases begun by information, or not originally begun in said court, may be waived by the accused in writing, or by consent in open court entered on the minutes." Section 8, ch. 197, Laws of 1881.

[5] Chapter 191, sec. 4687, Stats. (1911), provided:

**Issues of fact.** Section 4687. Issues of fact joined upon any indictment or information may be tried by a jury of less than twelve men whenever the accused in writing, or by consent in open court, entered in the minutes, waives a trial by a jury of twelve men. When there is no such waiver such issue shall be tried by a jury drawn and returned in the manner prescribed by law for the trial of issues of fact in civil causes.

123

one year later with an amendment to the trial by jury statute permitting a trial without a jury with the consent of the defendant. *See* sec. 357.01, Stats. (1925).[6]

The theme Ledger draws from these cases is that unless the legislature has expressly recognized a particular kind of jury waiver, such waiver is constitutionally ineffective. *See, e.g., State ex rel. Sauk County D.A. v. Gollmar*, 32 Wis. 2d 406, 410 & n.3, 145 N.W.2d 670, 672 (1966). He reasons that because the present trial by jury statute, sec. 972.02, Stats., does not expressly recognize a jury comprised of more than twelve members, his agreement to the contrary and the trial court's approval of the procedure is without legal effect.

---

[6] Section 357.01, Stats. (1925), provided:

**Issues of fact.** Issues of fact joined upon any complaint, indictment or information may be tried by the court without a jury or by a jury of less than twelve men whenever the accused in writing, or by statement in open court, entered in the minutes, consents thereto. When there is no such consent such issue shall be tried by a jury drawn and returned in the manner prescribed by law for the trial of issues of fact in civil causes.

The provision on waiver contained in sec. 357.01 remained unchanged until the 1949 revision of the criminal code. *See* sec. 120, ch. 631, Laws of 1949. As revised, sec. 357.01 read in relevant part as follows:

**Jury trial; waiver.** (1) Except as otherwise provided in this section, criminal cases in courts of record shall be tried by a jury of 12 jurors, drawn in the manner prescribed in chapter 270, unless the defendant waives a jury trial in writing or by statement in open court, entered in the minutes, with the approval of the court and the consent of the state.

(2) At any time before verdict the parties may stipulate in writing or by statement in open court, entered in the minutes, with the approval of the court, that the jury shall consist of any number less than 12.

The current waiver statute, sec. 972.02, Stats., is essentially a restatement of the 1949 revision. *See* sec. 972.02(1) and (2).

Section 972.02, Stats., provides in relevant part:

**Jury trial; waiver.** **(1)** Except as otherwise provided in this chapter, criminal cases shall be tried by a jury of 12, drawn as prescribed in ch. 805, unless the defendant waives a jury in writing or by statement in open court or under s. 967.08(2)(b), on the record, with the approval of the court and the consent of the state.

**(2)** At any time before verdict the parties may stipulate in writing or by statement in open court, on the record, with the approval of the court, that the jury shall consist of any number less than 12.

We accept Ledger's assertion that the jury contemplated by art. I, sec. 7 of the Wisconsin Constitution is the type of jury recognized at common law, *i.e.,* a twelve-member jury. *See, e.g., State ex. rel Sauk County,* 32 Wis. 2d at 409, 145 N.W.2d at 671–72; *State v. Cooley,* 105 Wis. 2d 642, 645, 315 N.W.2d 369, 370–71 (Ct. App. 1981). We also accept that a thirteen-member jury is not contemplated by sec. 972.02, Stats., since subsec. (1) of the statute recognizes a twelve-member jury and subsec. (2) recognizes a jury of less than twelve members when all parties stipulate. We also note that sec. 805.08(2), Stats., states that "if the number of jurors remains more than required at the time of the final submission of the cause, the court *shall* determine by lot which jurors shall not participate in deliberations and discharge them." (Emphasis added.)

Nonetheless, we are not persuaded that the procedure employed here requires reversal. When the trial court suggested the possibility of using a thirteen-member jury, the court directed defense counsel to discuss the matter with Ledger. The court clearly stated that it would not use the procedure unless agreed to by all the

parties. At the close of the evidence, defense counsel and the prosecutor indicated their agreement. The court then engaged in a personal colloquy with Ledger assuring that Ledger: (1) understood the agreement, (2) understood its consequences, (3) had received sufficient time to discuss the matter with his counsel, and (4) wished to proceed with the thirteen-member jury.

After the agreement was consummated and before the jury began its deliberations, the trial court instructed the jury that "before you can return a verdict which legally can be received, your verdict must be unanimous. In a criminal case all 13 of you must agree on what the verdict is before that verdict can legally be received by me." When the jury returned after deliberations, the verdicts were received without complaint, and the court inquired whether the jury had "arrived at a unanimous verdict."

We see no constitutional impediment to the use of a thirteen-member jury in the face of such an elaborate and detailed record documenting the defendant's consent and the jury's understanding of the unanimity requirement.

Moreover, we are convinced there is no likelihood that a thirteen-member jury would convict more readily than would a twelve-member jury. Indeed, the case law commentary suggests just the opposite. In *Williams v. Florida*, 399 U.S. 78 (1970), the Supreme Court upheld a Florida statute which limited defendants to a six-member jury in all but capital cases. The Court stated that "the 12-man jury [might] give[ ] a defendant a greater advantage since he has more chances of finding a juror who will insist on acquittal and thus prevent conviction." *Id.* at 101 & n.47. In *Johnson v. Louisiana*, 406 U.S. 356 (1972), the Supreme Court upheld the defendant's conviction by a nine-member majority vote of the

126

jury. The Court stated: "Of course, the State's proof could be regarded as more certain if it had convinced all 12 jurors instead of only nine; it would have been even more compelling if it had been required to convince and had, in fact, convinced 24 or 36 jurors." *Id.* at 362. In *Ballew v. Georgia,* 435 U.S. 223 (1978), the Court said: "Statistical studies suggest that the risk of convicting an innocent person . . . rises as the size of the jury diminishes." *Id.* at 234. In *Brown v. Louisiana,* 447 U.S. 323 (1980), the Court stated that "a decline in jury size leads to less accurate factfinding and a greater risk of convicting an innocent person." *Id.* at 332.[7]

All of the cases Ledger cites recognize that statutory authority is required *to diminish* a defendant's constitutional right to a jury trial. *See, e.g., Lockwood,* 43 Wis. at 405; *In re Staff,* 63 Wis. at 294–95, 23 N.W. at 590–91; *Jennings,* 134 Wis. at 309, 114 N.W. at 492; *Smith,* 184 Wis. at 672–73, 200 N.W. at 641. However, the procedure employed here was an enlargement of Ledger's right to a jury trial, not a diminution.

Ledger reasons that if a particular jury selection procedure is not recognized by the statutes, the practice is unconstitutional *per se.* We disagree. The constitution

---

[7] See also *United States v. Reed,* 790 F.2d 208, 210 (2d Cir.), *cert. denied,* 479 U.S. 954 (1986) (where the court stated that the thirteen-person guilty verdict presented no likelihood that the defendant was prejudiced); *United States v. Stewart,* 700 F.2d 702, 704–05 (11th Cir. 1983) (defense counsel's waiver of a twelve-person jury for a jury of thirteen was a tactical decision because by requiring a unanimous verdict, counsel sought to increase his clients' chances of acquittal); *United States v. Kaminski,* 692 F.2d 505, 518 (8th Cir. 1982) (where each defendant gave his personal consent on the record to have the alternate juror accompany the jury during its deliberations, and to be later substituted, the deviation was not so fundamental so as to require reversal).

sets out a level of protection below which the law may not descend when seeking a criminal conviction. However, if the parties with the approval of the trial court choose to employ a procedure which accords a greater level of protection, we see no constitutional impediment. By having a thirteen-member jury pass upon the question of his guilt or innocence, Ledger was granted a greater, rather than a lesser, constitutional protection.

Being mindful that a criminal defendant can waive many of the constitutional rights to which he or she would otherwise be entitled,[8] we reject Ledger's assertion that his agreement to forego a lesser protection for something greater was constitutionally ineffective.[9]

---

[8] *See, e.g., State v. Mitchell,* 167 Wis. 2d 672, 697–98, 482 N.W.2d 364, 374 (1992) (waiver of constitutional right against compulsory self-incrimination); *State v. Livingston,* 159 Wis. 2d 561, 565–66, 464 N.W.2d 839, 841 (1991) (waiver of constitutional right to trial by jury in favor of trial by the court); *State v. Gove,* 148 Wis. 2d 936, 941, 437 N.W.2d 218, 220 (1989) (waiver by defendant of constitutional right to confrontation); *State v. Mendoza,* 80 Wis. 2d 122, 140, 258 N.W.2d 260, 267 (1977) (waiver by defendant of constitutional right to venue where the crime was committed); *Keller v. State,* 75 Wis. 2d 502, 507–08, 249 N.W.2d 773, 776 (1977) (waiver by defendant of constitutional right to counsel); *Beverly v. State,* 47 Wis. 2d 725, 729, 177 N.W.2d 870, 872 (1970), *cert. denied,* 400 U.S. 995 (1971) (waiver of constitutional right to be present at trial or at the proceedings before trial).

[9] Ledger does not challenge the sufficiency of the trial court's colloquy with him on this subject. Thus, he does not claim that his agreement to use the thirteen-member jury was uninformed or involuntary. Therefore, this case does not present any issue as to whether a personal colloquy with the defendant is required, or, if so, the content of such colloquy. Nonetheless, we strongly recommend the kind of colloquy used by the trial court here to establish

## VOICE IDENTIFICATION LINEUP

Ledger next argues that the out-of-court[10] voice identification made by the victim, Michael Staves, should have been suppressed because the procedure employed by the police was "so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law." *See Stovall v. Denno*, 388 U.S. 293, 302 (1967). After Ledger's arrest, the police conducted a tape recorded voice identification lineup with Ledger and four other participants. Outside of Staves' visual observation, the police instructed Ledger and the other participants to repeat several of the phrases that were used by the perpetrator during the robbery.[11] Staves identified Ledger as the perpetrator because his voice "seemed to be slurred" and was "deeper."

Ledger contends the procedure was impermissibly suggestive because his lack of front teeth causes him to slur his speech, a distinctive characteristic none of the other four participants in the lineup shared. Ledger additionally argues that because his codefendant, Steven Walworth, also has a speech impediment caused by the absence of upper front teeth, the failure to include him in either the same or a separate lineup contributed to the suggestiveness of the out-of-court procedure.

---

the defendant's voluntary agreement with the procedure and understanding of its consequences.

[10] Ledger does not challenge on appeal the admissibility of Staves' in-court identification of him at trial.

[11] The procedure was conducted by having each of the five participants repeat three times, both with and without a ski mask, a series of statements made by the perpetrator during the masked armed robbery.

Out-of-court identifications are governed by our supreme court's decision in *Powell v. State*, 86 Wis. 2d 51, 271 N.W.2d 610 (1978). The supreme court stated:

> The test for determining whether an out-of-court . . . identification is admissible or, on review, whether the out-of-court identification was properly admitted has two facets. First, the court must determine whether the identification procedure was impermissibly suggestive. Second, it must decide whether under the totality of the circumstances the out-of-court identification was reliable, despite the suggestiveness of the procedures.

*Id.* at 65, 271 N.W.2d at 617 (adopting *Neil v. Biggers*, 409 U.S. 188, 199–200 (1972)). Once the defendant bears his or her burden of showing that the identification was the result of an impermissibly suggestive procedure, the state has the burden of showing that the identification was nonetheless reliable under the totality of the circumstances. *Id.* at 66, 271 N.W.2d at 617.

We are not persuaded that Ledger has met his threshold burden of showing that the out-of-court identification was the result of an impermissibly suggestive procedure. As to the lineup procedure, the trial court found (and the tape recording demonstrates) that each of the five voices sound similar in accent, range and volume. Although a slight lisp in Ledger's voice can be detected, any disparity between Ledger's voice and that of the other participants falls far short of the substantial likelihood of suggestiveness required for reversal. *Cf. Foster v. California*, 394 U.S. 440, 442–43 (1969); *Simmons v. United States*, 390 U.S. 377, 384 (1968).

Ledger makes much of the fact that Staves was able to identify his voice as that of the perpetrator's because

it was "deep" and had a "slur." The evidence adduced at trial, however, indicates that the only description Staves provided to the police immediately after the robbery was that of the perpetrator's physical characteristics and clothing. Neither after the robbery nor before the lineup did Staves relate to the police that the perpetrator had a deep voice or that his speech was slurred. Thus, it does not appear that the lineup participants were selected so as to emphasize any particular identifying characteristic of Ledger's.

The fact that Staves was able to articulate—*after the procedure*—distinguishing features of Ledger's voice that allowed him to identify Ledger as the perpetrator does not condemn the integrity of the lineup as impermissibly suggestive.

In a related argument, Ledger also argues that not including his codefendant, Walworth, in either the same or a separate lineup contributed to the procedure's suggestiveness. However, Walworth was never implicated as the party responsible for the actual hold-up—he was implicated as the party responsible for "casing" the establishment and driving the get-a-way car. While it may have been Ledger's preference to have Walworth included in the lineup procedure, the possibility that the procedure might have produced a better comparison does not render the procedure employed here impermissibly suggestive. Rather, factors causing doubts as to the accuracy of the identification can be attacked by counsel on cross-examination and closing argument and go to the weight to be given the identification by the jury. *See Manson v. Brathwaite*, 432 U.S. 98, 113 n.14 (1977); *Powell*, 86 Wis. 2d at 68, 271 N.W.2d at 618. Ledger's counsel vigorously attacked the reliability of Staves' out-of-court identification at trial.

Moreover, even if we were to conclude the identification was impermissibly suggestive, we would find under the totality of the circumstances that it was reliable. The factors to be considered include:

> [T]he opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

*Neil v. Biggers*, 409 U.S. 188, 199 (1972).

Here, Staves testified at trial that during the robbery the defendant stood only "a foot to ten inches" behind him, and Staves was able to accurately recall at least five separate statements made by Ledger during the robbery. Staves attentively observed the masked individual during the robbery and gave the police a description only minutes afterwards. Though the robber was masked, the description included the robber's race, gender, height, build, color of his facial hair and clothing worn. No serious claim has been made that Ledger did not possess the physical characteristics so described. Staves also testified at trial that when he heard Ledger's voice during the lineup, his "eyes lit up . . . [he] remembered that voice" and he "was positive that was it." Additionally, the identification was made only one week after the robbery. Weighing all the factors, we find no substantial likelihood of misidentification. The identification evidence was properly allowed to go to the jury.

Ledger next argues, along the same lines, that the manner in which the voice identification lineup was conducted denied him his sixth amendment right to counsel. Ledger's attorney was present throughout the duration

of the lineup and observed Staves during the entire procedure. After the lineup, however, Ledger's attorney requested that the police conduct another lineup with both Ledger and Walworth as participants or, in the alternative, with Walworth alone. 'The police refused. Ledger now contends the failure of the police to abide by his attorney's request violated his sixth amendment right to counsel. We cannot agree.

While there is no question that a defendant is entitled to the presence of counsel at any live lineup after the initiation of adversary judicial criminal proceedings against him, *United States v. Wade*, 388 U.S. 218, 236–37 (1967); *Gilbert v. California*, 388 U.S. 263, 272 (1967), the important purpose to be served by counsel at such a procedure *is that of observer. Wright v. State*, 46 Wis. 2d 75, 84, 175 N.W.2d 646, 651 (1970); *McMillian v. State*, 83 Wis. 2d 239, 244–45, 265 N.W.2d 553, 556 (1978). In *Wright*, our supreme court explained that:

> The presence of counsel at the lineup is intended to make possible the reconstruction at the time of trial any unfairness that may have occurred at the time of the lineup. *The important purpose to be served is that of observer.* A police lineup is not a magisterial or judicial hearing at which a record is made and objections to procedures can be entered. The lawyer is present as eyes and ears for the accused, not as interrogator or cross-examiner. *It is his presence, not his participation, that is relied upon to prevent unfairness and lessen the hazards of eyewitness identification at the lineup itself. . ..*
>
> . . . In fact, the limited purpose served by the presence of counsel at the time of the lineup has led to the holding that the fact that the attorney present at the lineup did not represent the defendant on the charge

for which the lineup was conducted did not prejudice the defendant. . ..

*Id.*, 46 Wis. 2d at 84–85, 175 N.W.2d at 651 (emphasis added).

Here, Ledger's counsel was present at the lineup and even asserted his advice and thoughts concerning the procedure. Through his presence, he served as Ledger's "eyes and ears"—the very role the law contemplates. Counsel was not required, and indeed had no authority, to direct the lineup procedure. "His function, as observer, was to assist the court in reconstructing the circumstances of the lineup at the time of trial." *Id.* at 84, 175 N.W.2d at 651. Because counsel's function as an observer at the lineup was not frustrated, we reject Ledger's sixth amendment claim.

## STATEMENTS AFTER ARREST

Finally, we address Ledger's claim that statements obtained by the police after his arrest violated his sixth amendment right to counsel. The criminal complaint charging Ledger with masked armed robbery was filed in the clerk of courts office prior to the police executing an arrest and search warrant at Ledger's residence. At his residence and again after he was transported to the police department, Ledger was advised of and waived his *Miranda* rights. Thereafter, he made several incriminating statements to the police. Ledger argues that because his sixth amendment right to counsel had already attached by the time of his arrest—*i.e.,* when he was formally charged by criminal complaint—his waiver under *Miranda* was ineffectual and the statements should have been suppressed.

Ledger filed both a pretrial motion and an amended motion to suppress the statements. Both motions were

partially based upon Ledger's claim that his sixth amendment right to counsel had been violated.[12] However, Ledger's arguments at the pretrial motion hearing, and the trial court's interpretation of the challenge, went only to the fifth amendment/*Miranda* aspects of the issue. Now on appeal, Ledger attempts to broaden the argument to encompass his sixth amendment claim. Ledger concedes on appeal that "the focus of the hearing appears to have been primarily centered around *Miranda*."

On appeal, issues raised but not briefed or argued are deemed abandoned. *Reiman Assocs. v. R/A Advertising*, 102 Wis. 2d 305, 306 n.1, 306 N.W.2d 292, 294 (Ct. App. 1981). Akin to this rule, for purposes of trial court proceedings, is the principle that a party must raise and argue an issue with some prominence to allow the trial court to address the issue and make a ruling. *See State v. Salter*, 118 Wis. 2d 67, 79, 346 N.W.2d 318, 324 (Ct. App. 1984). In this case, while Ledger's motions arguably raised his sixth amendment claim, he tacitly abandoned this argument in the actual proceedings by arguing only the *Miranda* and voluntariness aspects of the issue. Because we conclude the issue was abandoned at the trial court, we decline to review it on appeal. *See Zeller v. Northrup King Co.*, 125 Wis. 2d 31, 35, 370 N.W.2d 809, 812 (Ct. App. 1985).

*By the Court.*—Judgment and order affirmed.

---

[12] Ledger's motions are entitled "Notice Of Motion And Motion To Suppress Statements" and "Notice Of Motion And Amended Motion To Suppress Statements." The body of each motion asserts that the "statements were obtained in violation of rights guaranteed to him by . . . the Fourth, Fifth, Sixth and Fourteenth Amendments," and the amended motion adds "specifically the right to counsel and proper *Miranda* warnings."

ANDERSON, J. (*dissenting*). I dissent. Absent a legislative pronouncement of public policy permitting a defendant to acquiesce to be tried by a jury greater than twelve, it is plain error to permit more than twelve jurors to deliberate.

An overriding principle is that the court of appeals is primarily an error-correcting court, *State ex rel. Swan v. Elections Board,* 133 Wis. 2d 87, 93, 394 N.W.2d 732, 735 (1986), and we are bound by the decisions of the Wisconsin Supreme Court. *State v. Lossman,* 118 Wis. 2d 526, 533, 348 N.W.2d 159, 163 (1984). Even where we believe that a particular decision is incorrect, *State ex rel. McCaffrey v. Shanks,* 124 Wis. 2d 216, 221, 369 N.W.2d 743, 747 (Ct. App. 1985), and decisions from other jurisdictions are better reasoned, *see Professional Office Buildings v. Royal Indemnity Co.,* 145 Wis. 2d 573, 580, 427 N.W.2d 427, 429–30 (Ct. App. 1988), we are prevented from changing existing law as announced by our supreme court. *State v. Fawcett,* 145 Wis. 2d 244, 253, 426 N.W.2d 91, 95 (Ct. App. 1988). I conclude that precedents from early statehood necessitate reversal of Ledger's conviction and remand for a new trial.[1]

---

[1] I do not believe that the controlling precedent is well reasoned. If we were writing on a clean slate I would join the majority. Our supreme court first held that statutory authorization was required before a defendant could waive the right to a twelve-person jury trial in *State v. Lockwood,* 43 Wis. 403 (1877). The wisdom of this holding was thoughtfully questioned in *In re Staff,* 63 Wis. 285, 293, 23 N.W. 590–91 (1885). However, the supreme court felt duty bound to follow the precedent of *Lockwood* despite believing the better decision would have been to permit a defendant to waive the right to a twelve-person jury without the authority of a statute. Along with the supreme court in *Staff* and the majority in this case, I recognize that a defendant may waive many rights secured by the constitution and it would be reasonable to include in that list the right to a twelve-person jury.

Several decisions of our supreme court on criminal jury trial practice provide the basis for principles that bind this court. We are compelled to follow existing precedent even where, as in this case, there have been substantial changes in the law in the last 110 years, decisions from other jurisdictions are better reasoned, and the rights of Ledger were conscientiously protected by the trial court. I believe that prior decisions establish several binding principles.

First, under Wisconsin's Constitution, a defendant in a criminal action has a right to a twelve-person jury. Second, any change in the number of constitutionally mandated jurors is a question of public policy. Third, only the legislature is authorized to change public policy that deviates from the constitutional requirement of a twelve-person jury. Fourth, the legislature has explicitly permitted a defendant to agree to less than twelve jurors. Fifth, the legislature has explicitly not permitted more than twelve jurors because it requires that "additional jurors" be discharged before deliberations. These precedents lead me to conclude that the legislature has declared that it is the public policy of this state that no more than twelve jurors shall deliberate in a criminal action. Further, precedents prohibit a defendant from acquiescing to any variation from a constitutional jury of twelve unless authorized by the legislature.

I begin my analysis with the two provisions of the Wisconsin Constitution that secure the right of trial by jury to the citizens of this state. Article I, sec. 5 of the Wisconsin Constitution provides in part:

Despite the attraction of a consistent policy on the waiver of constitutional rights, I believe that as an error-correcting court we cannot ignore precedent.

**Trial by jury; verdict in civil cases.** The right of trial by jury shall remain inviolate, and shall extend to all cases at law without regard to the amount in controversy; but a jury trial may be waived by the parties in all cases in the manner prescribed by law.

Article I, sec. 7, provides in part:

**Rights of accused.** In all criminal prosecutions the accused shall enjoy the right . . . in prosecutions by indictment, or information, to a speedy public trial by an impartial jury of the county or district wherein the offense shall have been committed . . ..

It is well established that these two provisions secure separate and distinct rights. Wisconsin Constitution art. I, sec. 5 is limited to civil actions at law. *See Bennett v. State,* 57 Wis. 69, 74, 14 N.W. 912, 914–15 (1883). In criminal actions, Wisconsin Constitution art. I, sec. 7 secures to the defendant a right of trial by jury. *Bennett,* 57 Wis. at 75, 14 N.W. at 915. The obvious difference between these two constitutional provisions is that in civil actions a party has a constitutional right to waive a jury trial, while a criminal defendant does not have the equivalent right. If Wisconsin Constitution art. I, sec. 5 was applicable to criminal actions, there is no question that a criminal defendant could waive the right to a jury trial. *Bennett,* 57 Wis. at 74, 14 N.W. at 915.

However, the constitutional support for a jury trial in criminal actions is Wisconsin Constitution art. I, sec. 7; that provision's absolute guarantee of a jury trial has provided fodder for numerous appeals. The earliest Wisconsin case is *State v. Lockwood,* 43 Wis. 403 (1877), where the question was whether a defendant could waive the right to trial by jury in favor of trial by the court. In reversing Lockwood's judgment of conviction entered

after a court trial, the supreme court held that "[t]he right of trial by jury . . . for crime, is secured by the constitution, upon a principle of public policy, and cannot be waived." *Id.* at 405.

Eight years later, the question before the court was whether a statute expressly permitting waiver of a jury trial in the Rock county municipal court was constitutional. In upholding the constitutionality of the statute the court held that the legislature had the power to permit a defendant to waive a jury and be tried by the court. *In re Staff,* 63 Wis. 285, 294, 23 N.W. 587, 590 (1885). In the opinion of our supreme court the right of a defendant to trial by a jury was a matter of public policy created by the legislature; the legislature was not prohibited from changing public policy as it saw fit.[2] *Id.*

The next case to consider a variation of the twelve-person jury was *Jennings v. State,* 134 Wis. 307, 114 N.W. 492 (1908). In *Jennings,* one of the jurors failed to return for instructions and deliberations. Jennings then agreed that the eleven remaining jurors could decide the charges against him. In reversing his conviction our supreme court held that if a defendant in a criminal case cannot waive the right of trial by jury, the defendant cannot agree to be tried by less than twelve jurors. The court wrote, "If it is deemed good public policy to extend the privilege of waiving a jury in criminal cases, such policy should find expression in appropriate legislative action." *Id.* at 310, 114 N.W. at 493.

Our supreme court in *State v. Smith,* 184 Wis. 664, 200 N.W. 638 (1924), was again confronted with a defen-

---

[2] The United States Supreme Court has also suggested that it is only the legislature that has the power to declare public policy and authorize a departure from the common law practice of a twelve-person jury. *See Williams v. Florida,* 399 U.S. 78, 103 (1970).

dant's waiver of a jury trial. In 1911, the legislature, in response to *Jennings*, authorized a defendant to expressly agree to a trial by a jury of less than twelve. The court again held that a trial by other than a twelve-person jury was "more properly within the field of legislative than judicial declarations of public policy." *Id.* at 672, 200 N.W. at 641. The court commented that it appeared that the state constitutional right to a twelve-person jury trial was impregnable public policy and required legislative action to change that policy. *See id.* at 672–73, 200 N.W. at 641.

The foundation for these decisions is found not just in the absence of a right to waive a jury trial in Wisconsin Constitution art. I, sec. 7; it is also found in our supreme court's early recognition that "the jury mentioned in said section means a jury of twelve impartial men,—such a jury as was known to the common law and to the courts of the territory of Wisconsin before the state was organized." *Bennett*, 57 Wis. at 75, 14 N.W. at 915.

The United States Supreme Court has noted that "the fact that the jury at common law was composed of precisely 12 is a historical accident, unnecessary to effect the purposes of the jury system and wholly without significance 'except to mystics.' " *Williams v. Florida*, 399 U.S. 78, 102 (1970). In *Williams*, the Court concluded that the sixth amendment of the federal constitution does not require that a jury in criminal cases forever be composed of twelve people. *Id.* at 103. *Williams* establishes that the sixth amendment right to a jury trial is applicable to the states through the fourteenth amendment and supports the proposition that size of the jury is not of fundamental constitutional importance. *See State v. Cooley*, 105 Wis. 2d 642, 645, 315 N.W.2d 369, 371 (Ct. App. 1981).

However, in Wisconsin we continue to recognize that the our state constitution guarantees a twelve-person jury. *Id.* Also, our supreme court continues to require that "jury trials in criminal cases cannot be waived absent statutory authorization." *State ex rel. Sauk County Dist. Attorney v. Gollmar,* 32 Wis. 2d 406, 410, 145 N.W.2d 670, 672 (1966).

The legislature has not authorized more than twelve jurors in criminal actions. Section 756.096(3), Stats., requires that "[a] jury in criminal cases shall consist of 12 persons unless both parties agree on a lesser number as provided in s. 972.02."

Section 972.02, Stats., governs criminal jury trials:

> **972.02 Jury trial; waiver. (1)**   Except as otherwise provided in this chapter, criminal cases shall be tried by a jury of 12, drawn as prescribed in ch. 805, unless the defendant waives a jury in writing or by statement in open court or under s. 967.08(2)(b), on the record, with the approval of the court and the consent of the state.
> **(2)**   At any time before verdict the parties may stipulate in writing or by statement in open court, on the record, with the approval of the court, that the jury shall consist of any number less than 12.

Section 972.04(1), Stats., provides that the twelve jurors shall be impaneled unless, under sec. 972.02(2), the court approves a stipulation for a smaller jury or the court orders that "additional jurors" be seated. However, the authorization for the court to seat "additional jurors" is not authorization for more than twelve to deliberate.[3] The drawing of jurors and seating of "additional jurors" is dictated in sec. 805.08(2), Stats.:

---

[3] The term "additional jurors" cannot be interpreted to mean that more than twelve jurors can deliberate. "Additional jurors"

> A sufficient number of jurors shall be called in the action so that the number applicable under s. 756.096(3)(b) remains after the exercise of all peremptory challenges to which the parties are entitled under sub. (3). The court may order that additional jurors be impaneled. In that case, if the number of jurors remains more than required at the time of the final submission of the cause, *the court shall determine by lot which jurors shall not participate in deliberations and discharge them.* [Emphasis added.]

The legislature repeats the directive that "additional jurors" be discharged before deliberations in sec. 972.10(7), Stats.,

> If additional jurors have been impaneled under s. 972.04(1) and the number remains more than required at final submission of the cause, *the court shall determine by lot which jurors shall not participate in deliberations and discharge them.* [Emphasis added.]

My analysis of precedent from the supreme court and current statutes sustains my opinion that the trial court erred in permitting thirteen jurors to deliberate. The trial court's variation of the constitutional jury of twelve was done without legislative authority. As *Lockwood* and *Staff* hold, Ledger's acquiescence to this variation of the constitutionally mandated twelve-person jury

---

became part of the language of civil and criminal jury trial practice with the adoption of 1983 Wis. Act 226 which abolished the concept of "alternate jurors." The explanatory notes of the Judicial Council to this act make clear that the term was selected to do no more than promote an attentive attitude and collegial relationship among all the jurors. The Judicial Council carefully explained that the changes produced by the act required that the jurors exceeding the "proper number" be discharged and not permitted to participate in deliberations.

does not cure the error because the legislature has not explicitly declared that the public policy of this state permits a jury of more than twelve.

In support of the majority's holding that specific legislative authorization is not needed for Ledger to agree to the "greater . . . constitutional protection" of thirteen jurors, the majority declares that Ledger's chance of acquittal is better with thirteen jurors. The majority relies on four United States Supreme Court decisions to buttress this declaration. The majority quotes *Williams*, 399 U.S. at 101 & n.47: "[T]he 12-man jury [might] give[ ] a defendant a greater advantage since he has more 'chances' of finding a juror who will insist on acquittal and thus prevent conviction." (Majority opinion at 126.) However, the *Williams* Court continues by observing:

> But the advantage might just as easily belong to the State, which also needs only one juror out of twelve insisting on guilt to prevent acquittal. What few experiments have occurred—usually in the civil area—indicate that there is no discernible difference between the results reached by the two different-sized juries. In short, neither currently available evidence, nor theory suggest that the 12-man jury is necessarily more advantageous to the defendant than a jury composed of fewer members.

*Id.* at 101-02 (footnotes omitted).

The *Williams* Court also commented, "[s]tudies of the operative factors contributing to small group deliberations and decisionmaking suggest that jurors in the minority on the first ballot are likely to be influenced by the proportional size of the majority aligned against them." *Id.* at 101 n.49. I cannot reach a conclusion from this comment, but it does suggest that a lone dissenter

on a thirteen-person jury is more likely to "cave in" to the other twelve than a lone dissenter on a twelve-person jury is to "cave in" to the other eleven.

A second decision the majority relies upon is *Ballew v. Georgia*, 435 U.S. 223 (1978). In *Ballew*, the Supreme Court held that a five-person jury substantially threatens constitutional guarantees. Writing the lead opinion for the Court, Justice Blackmun carefully examined scholarly work on jury size spawned by the *Williams* decision. It is in the midst of Justice Blackmun's summary of studies on juries that the majority found the quote, "[s]tatistical studies suggest that the risk of convicting an innocent person ... rises as the size of the jury diminishes."[4] (Majority opinion at 127.)

Justice Blackmun's summary of the scholarly work contains one project's conclusion that the optimal size of a jury is between six and eight. *Id.* at 234. The lead opinion in *Ballew* does not discuss any scholarly work on juries of more than twelve and does not reach a conclusion as to whether or not a jury of thirteen or more is beneficial or detrimental to a defendant. The only conclusion the Supreme Court reaches is "that the purpose and functioning of the jury in a criminal trial is seriously impaired, and to a constitutional degree, by a reduction in size below six members." *Id.* at 239.

---

[4] The quote is from a summary of scholarly work questioning the accuracy of results reached by small juries:

> Second, the data now raise doubts about the accuracy of the results achieved by smaller and smaller panels. *Statistical studies suggest that the risk of convicting a innocent person* (Type I error) *rises as the size of the jury diminishes.* Because the risk of not convicting a guilty person (Type II error) increases with the size of the panel, an optimal jury size can be selected as a function of the interaction between the two risks.

*Ballew v. Georgia*, 435 U.S. 223, 234 (1978) (emphasis added; footnotes omitted).

Finally, the majority relies upon *Johnson v. Louisiana*, 406 U.S. 356 (1972),[5] and *Brown v. Louisiana*, 447 U.S. 323 (1980),[6] to support its conclusion that Ledger received greater protection from a thirteen-person jury. I distinguish those two cases because both were a challenge to Louisiana's nonunanimous jury verdict practice in criminal actions and not a challenge to the size of the jury.

I cannot accept the majority's logic that if smaller and smaller juries endanger a defendant then larger and larger juries protect the defendant. First, none of the United States Supreme Court decisions reaches this conclusion; in fact, in none of the cases was the Court asked to consider if a jury greater than twelve was constitutional. Second, none of the studies summarized in the opinions considered juries greater than twelve.

---

[5] *Johnson v. Louisiana*, 406 U.S. 356 (1972), was decided two years after *Williams v. Florida*, 399 U.S. 78 (1970), and did not benefit from the scholarly work summarized in *Ballew v. Georgia*, 435 U.S. 223 (1978).

[6] *Brown v. Louisiana*, 447 U.S. 323 (1980), accepts the conclusion in *Ballew v. Georgia* 435 U.S. 223 (1978), that the decrease in the size of the jury leads to less accurate fact finding. *Brown,* 447 U.S. at 332.