McMillian, Plaintiff in error, v. State, Defendant in error.

*No. 76–162–CR. Submitted on briefs April 6, 1978.—
Decided May 2, 1978.*
(Also reported in 265 N. W. 2d 553.)

For the plaintiff in error the cause was submitted on the brief of *Howard B. Eisenberg,* state public defender,

and *Alvin E. Whitaker,* assistant state public defender.

For the defendant in error the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Pamela Magee-Heilprin,* assistant attorney general.

CONNOR T. HANSEN, J. On November 2, 1973, at approximately 2:20 a.m., a man entered a gas station and asked Roy Beals, the attendant, for permission to use the telephone. He was followed by a second man, holding what appeared to be a .45-caliber automatic pistol, and by a third man, whom Beals was unable to see. The defendant was identified at trial as having been the second man, the gunman.

Beals testified that the gunman was approximately 5′ 6″ or 5′ 7″ tall, and wore a knee-length brown vinyl coat, with a nappy or fleecy lining and collar. From the loose fit of the coat, Beals assumed the man was thin. The man wore what appeared to be uniform pants and a security guard's cap, with a badge, and had a second badge pinned on his collar.

The fleecy coat collar was turned up around the man's face, and the bill of his cap came down to his eyebrows. Beals was therefore able to observe only a portion of the man's face. From his observation, Beals could tell that the gunman was a black man and that he was not wearing glasses, but could not describe him further. He could not describe the man's hair or estimate his age.

Beals did hear the man's voice, although the voice was muffled by the fleecy collar. Beals testified that the gunman told him to turn around, to go into a back room, and to lie face down on the floor. Beals did as he was instructed. Following him into the back room, the gunman then asked where the money was. Beal answered that the money was in a locked box on a post outside. The man demanded a key, but Beals did not have one. The man then took Beals' wallet, which was empty, and

asked if Beals didn't have any money. Beals explained that his boss did not permit him to carry money. Beals also testified that at one point, the gunman struck him with the weapon he was carrying.

The robbers were in the station for about five minutes, and Beals spent most of this time face down on the floor. After they left, Beals found that they had taken, in addition to his empty wallet, his coat, containing five dollars, a transistor radio, and about six cartons of Kools cigarettes.

Later that same day, Kenosha police stopped a car containing four young black men, including the defendant, Oscar B. McMillian. In the car, but not on the person of any of the occupants, the police found what were subsequently identified as the coat, pants, hat and badges worn by the gunman in the robbery. Also in the car were a number of cartons of Kools cigarettes and what was identified as the transistor radio stolen from the gas station. In addition, the police found a BB pistol or pellet gun resembling a .45-caliber automatic; Beals later testified that this gun appeared to be the same weapon used in the robbery.

The four occupants of the car were taken into custody. At some point prior to November 5, 1973, the Kenosha police staged a lineup, consisting of these four men, in connection with the investigation of an unrelated crime, a purse snatching. The lineup was recorded on videotape with an audio recording of the men speaking. The record does not indicate, and the state does not maintain, that the defendant was represented by counsel at this lineup.

On November 5, 1973, the defendant was charged with armed robbery, contrary to sec. 943.32(1)(b) and (2), Stats. At some time thereafter, the audio-videotaped lineup was shown to Roy Beals. The defendant was given no notice that Beals was to view the recorded lineup, and defense counsel was not present at the viewing.

Based on the defendant's height and build and on his voice, Beals identified the defendant as the second man, in the robbery, the gunman.

At trial, the defendant was identified by two witnesses as having been the second man at the robbery. The first of these witnesses was Phillip Kidd, one who had been apprehended in the car with the defendant, and who testified that he had been the first man to enter the gas station, that is, the man who asked to use the telephone. Kidd had been given immunity in exchange for his testimony, which was inconsistent with his testimony at the preliminary hearing to the extent that he had there testified that the defendant was the third robber seen by Beals.

The second witness to identify the defendant, over defendant's objections, was Beals himself. Beals testified that he did not believe he could have done so, however, if he had not viewed and heard the recorded lineup prior to trial.

The principal issue on this review is whether a criminal defendant is constitutionally entitled to be represented by counsel at the staging or viewing of an audio-video-taped lineup. We conclude he has no such constitutional right.

The defendant argues that the recorded lineup without notice to, or the presence of, defense counsel, constituted a denial of the defendant's right, under the Wisconsin and federal constitutions, to effective assistance of counsel.

There is no question that a defendant is entitled to the presence of counsel at any live lineup conducted after the initiation of adversary judicial criminal proceedings against him. *United States v. Wade*, 388 U.S. 218 (1967); *Gilbert v. California*, 388 U.S. 263 (1967); *Kirby v. Illinois*, 406 U.S. 682 (1972); *Wright v. State*, 46 Wis.2d 75, 175 N.W.2d 646 (1970); *State v. Beals*,

52 Wis.2d 599, 191 N.W.2d 221 (1971). It is equally clear that the presence of counsel is not required when photographs are displayed to a witness for the purpose of attempting an identification of the offender. *United States v. Ash*, 413 U.S. 300 (1973); *Holmes v. State*, 59 Wis.2d 488, 208 N.W.2d 815 (1973); *Kain v. State*, 48 Wis.2d 212, 179 N.W.2d 777 (1970).

The question presented here is whether the exhibition of a recorded lineup, by means of audio-video recording, is in the nature of a live lineup or of a photographic display. The introduction of audio-video technology presents the question of the procedure to be followed in the use of these methods of identification.

The starting point for analysis is the principle that an accused is entitled to counsel at any "critical stage" of the prosecution. *Kirby v. Illinois, supra,* at 690; *Simmons v. United States,* 390 U.S. 377, 382, 383 (1968); *Smith v. State,* 33 Wis.2d 695, 148 N.W.2d 39 (1967). A pretrial proceeding is a "critical stage" if:

". . . the presence of . . . counsel is necessary to preserve the defendant's . . . right meaningfully to cross-examine the witnesses against him and to have effective assistance of counsel at the trial itself. . . ." *United States v. Wade, supra,* at 227.

In determining whether the type of identification involved here constitutes such a "critical stage," it is necessary to consider the function of the defense lawyer at a live lineup.

This court has held that the fundamental reason for having a defense attorney present at a lineup is to have him observe the detailed circumstances surrounding the lineup so that they may be reconstructed at trial or at a hearing on a pretrial motion. *State v. Beals, supra,* at 609. The defense attorney is present as "an eyewitness

to the actual circumstances of the lineup"; he is "an observer for the defendant." *State v. Beals, supra,* at 609.

In *Wright v. State, supra,* at 84, this court explained:

". . . The presence of counsel at the lineup is intended to make possible the reconstruction at the time of trial of any unfairness that may have occurred at the time of the lineup. The important purpose to be served is that of observer. A police lineup is not a magisterial or judicial hearing at which a record is made and objections to procedures can be entered. The lawyer is present as eyes and ears for the accused, not as interrogator or cross-examiner. It is his presence, not his participation, that is relied upon to prevent unfairness and lessen the hazards of eyewitness identification at the lineup itself . . . His function, as observer, [is] to assist the court in reconstructing the circumstances of the lineup at the time of trial. . . ."

Underlying the requirement that counsel be present is the concern that:

". . . the accused's inability effectively to reconstruct at trial any unfairness that occurred at the lineup may deprive him of his only opportunity meaningfully to attack the credibility of the witness' courtroom identification." *United States v. Wade, supra,* at 231, 232.

In *United States v. Ash, supra,* the Supreme Court stated that the initial test of the necessity for counsel is whether a pretrial proceeding constitutes a "trial-like confrontation" requiring the assistance of counsel, and that if such a confrontation is involved, a reviewing court must further determine whether confrontation with counsel at trial can adequately substitute for counsel at the pretrial confrontation. It is here that the reconstructibility of the identification becomes crucial. "If accurate reconstruction is possible," said the Supreme Court in *Ash, supra,* at 316, "the risks inherent in any confrontation still remain, but the opportunity to cure

defects at trial causes the confrontation to cease to be 'critical.' . . ."

It is this opportunity for reconstruction which renders counsel unnecessary at a photographic identification. Concurring in *Ash, supra,* at 323, Mr. Justice STEWART observed that while the "dynamic context" of a lineup makes it difficult for an accused to reconstruct a lineup at trial, a photographic identification can readily be reconstructed by examining the photographs used and by questioning the witnesses regarding the arrangement of the photos, any comments or gestures of the prosecuting authorities, and similar kinds of overt influence. In this regard, identification by means of audio-video recordings closely resembles identification from a still photograph. It both preserves and enhances the quality of ready reconstructibility of the actual lineup. It is firmly established that counsel is not required at the viewing of still photographs, and for the same reasons it cannot be said that the presence of counsel at the viewing of a recorded lineup rises to a right of constitutional dimensions.

This court has said that a live lineup requires the presence of defense counsel "as eyes and ears for the accused." *Wright v. State, supra,* at 84. This is a "limited purpose" which need not be performed by the same lawyer who represents the defendant at trial. *Wright v. State, supra,* at 85. In a recorded lineup the camera and the microphones are the "eyes and ears" for the accused. Such a recording would be more observant, more objective, more retentive and hence more reconstructible than a live lineup. It would also be of more effective assistance in the making of the ultimate judicial determination of suggestiveness than the personally recalled observations of either state witnesses or defense counsel.

Identification by recording further resembles identification from a still photo in that neither involves the

physical presence of the defendant. Language in a number of decisions has emphasized this consideration.

Thus, in *Dozie v. State,* 49 Wis.2d 209, 218, 181 N.W. 2d 369 (1970), this court, after noting that a live lineup necessarily involves the physical presence of the defendant, said:

> ". . . *The presence of the defendant being required, Wade-Gilbert* requires that, at least at a certain stage in the process, the suspect's attorney also be present or such presence waived. . . ." (Emphasis added.)

Similarly, this court has said that "the rationale of *Wade, supra,* applies only *where the defendant is present* and confronted by a witness . . ." *Holmes v. State, supra,* at 500 (Emphasis added), and that the right to counsel is the right to "presence of counsel at the actual confrontation between the individuals in the lineup and the witness or witnesses." *State v. Beals, supra,* at 607.

Thus, there is a strong historical basis for associating the role of counsel with the actual presence of the defendant. In *Ash, supra,* at 313, the Supreme Court traced the development of the right to counsel and concluded that the right extends to "trial-like confrontations" where the accused himself requires aid in coping with legal problems or in meeting his adversary.

This right does not extend to a photographic display, the Supreme Court held, explaining that:

> ". . . Since the accused himself is not present at the time of the photographic display, and asserts no right to be present, . . . no possibility arises that the accused might be misled by his lack of familiarity with the law or overpowered by his professional adversary. . . ." *United States v. Ash, supra,* at 317.

The instant defendant was not present when the videotape recording was viewed by the witness. In this respect

the instant identification resembles the use of a still photograph or a voice recording, neither of which requires the presence of counsel. *Holmes v. State, supra* (still photo) ; *United States v. Poole,* (D.C. Cir. 1974), 495 Fed.2d 115 (still photo of lineup) ; *Jones v. State,* 59 Wis.2d 184, 191, 192, 207 N.W.2d 890 (1973) (voice recording). A videotape recording is, in effect, a combination of a photograph and a voice recording, with the added element of movement.

Here the recording was made in connection with the police investigation of a prior offense. Obviously the witness was not present at the taping, and we find no constitutional right to the presence of defense counsel at the taping of such a recording.

We conclude that the reconstructibility of the videotape lineups and the physical absence of the defendant at the viewing are more closely analogous to a photographic view than to the confrontation established by a live lineup. The result is that the presence of counsel at either the taping or the viewing of an audio-video recording is not constitutionally mandated.[1]

The defendant also argues that the trial court erred in not holding a *Wade-Gilbert* hearing[2] to determine whether the out-of-court identification of the defendant was the product of an illegal confrontation or one so suggestive as to deny him due process of law.

---

[1] *Cox v. State* (Fla. App. 1969), 219 So.2d 762, held that a defendant is entitled to be represented by counsel when a videotape recording is shown to a witness in lieu of a live lineup or other confrontation. However, *Cox, supra,* was decided prior to *Ash, supra.* The United States Supreme Court in *Ash, supra,* at 302, *fn.* 2, in holding that there is no right to the presence of defense counsel at a photographic identification, considered the videotape in *Cox* to be a photographic identification.

[2] *United States v. Wade, supra; Gilbert v. California, supra,* sometimes referred to by this court as a *Goodchild*-type hearing. *State v. Brown,* 50 Wis.2d 565, 573, 185 N.W.2d 323 (1971) ; *State ex rel. Goodchild v. Burke,* 27 Wis.2d 244, 133 N.W.2d 753 (1965), *cert denied,* 384 U.S. 1017.

The difficulty with the position of defendant is that no request was made for a *Wade-Gilbert* hearing, and since no request was made, any right to such a hearing was waived. *Coleman v. State,* 64 Wis.2d 124, 129, 218 N.W. 2d 744 (1974). The record reflects that objection was made to the admission of the identification testimony; that a conference was held in the chambers of the trial judge; and that the court held the testimony admissible. There was no request for an evidentiary hearing.

Moreover, the record discloses no issues which would require such a hearing. Although the details of the circumstances surrounding the lineup and the viewing of the videotape were not developed at the trial, the state did not contend that defense counsel had been present at the staging or viewing of the lineup videotape. In addition, witness Beals testified that he did not believe he could have identified the defendant without having seen the videotape, and this testimony established that there was no independent basis for the in-court identification.

Therefore, absent any request for a *Wade-Gilbert* hearing, the only question remaining was the purely legal question whether the right to presence of counsel extends to the staging or viewing of a videotaped lineup. This question was addressed and resolved out of the presence of the jury, in the trial court's chambers. No discernible purpose remained to be served by an evidentiary hearing. The trial court did not err in failing to hold such a hearing.

Finally, the defendant contends that the identification testimony of Beals was so unreliable as to be inadmissible as a matter of law. This alleged unreliability concerns the method by which Beals identified the defendant from the videotape.

Beals testified at trial that his pretrial identification had been based on the defendant's voice and height. The defendant's build also was consistent with Beals' as-

sumption, based on the loose fit of the robber's coat, that the robber was thin. Beals explained that his visual identification had been made by comparing the defendant's height with that of another man in the lineup, whom Beals recognized as the first robber, who had asked to use the telephone. The relative heights of the defendant and this man corresponded to the relative heights of the robbers, Beals said.

At trial, Beals was shown a photograph of the men in the lineup and was unable to positively identify the first robber, whose height he had used in identifying the defendant. In fact, Beals misidentified this robber as one Curtis Peterson, when Phillip Kidd, also in the lineup, testified that he had been the first robber.

The defendant argues that Beals' testimony shows that the underlying basis for his identification was faulty and contends that his identification testimony was therefore inadmissible as a matter of law. However, Beals' inability to identify the photograph of the first robber at the time of trial does not show that he had misidentified the first robber when he viewed the videotape, almost a year earlier. Beals testified that his memory had been much fresher immediately after the robbery and that he had been able to identify the first robber at that time. Moreover, Beals' identification was based not only on the defendant's height, but also on his voice. Although the robber's voice was muffled somewhat by his collar, Beals was able to hear it distinctly enough to recognize it as the voice of the defendant. On this record, it cannot be said that Beals' testimony was so unreliable as to be inadmissible as a matter of law. The weight to be given to his testimony was therefore a matter for the jury.

*By the Court.*—Judgment and orders affirmed.