**UNITED STATES of America, Appellee,**

v.

**Theodore D. AMRINE, Appellant.**

**No. 82–2153.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 15, 1983.

Decided Dec. 29, 1983.

Rehearing Denied Feb. 7, 1984.

HENLEY, Senior Circuit Judge.

Theodore D. Amrine appeals from his conviction for bank robbery under 18 U.S.C. § 2113. Amrine challenges the identification procedures utilized in obtaining his conviction. Specifically he contends his right to counsel was violated when a videotape of a lineup was shown to eyewitnesses without his attorney being present. Secondly, he alleges that all the identification procedures were so suggestive that they violated his due process rights. We affirm the judgment of the district court.[1]

On the morning of March 18, 1982 the Steel Workers Credit Union in Kansas City, Missouri was robbed of $11,350.00. Two men, both armed with revolvers, took part in the robbery. While one of the men waited in the lobby area of the Credit Union, the other, later identified as Amrine, jumped over the tellers' counter and ordered everyone to get down on the floor. After taking the money out of the tellers' cash drawers and dumping it into an orange wastebasket, both men left two to three minutes after their entry. A witness' observed two black men, one of whom was carrying a "red package," cross the Credit Union parking lot and get into a dark and light blue Buick. This car was later found a few blocks away and was registered to Amrine's sister. The orange wastebasket was found near the automobile.

Detective Luther of the Kansas City Police Department interviewed several Credit Union employees on the day of the robbery and obtained a physical description of one of the robbers. Later that same day Detective Luther returned with six photographs. This photo array was displayed to each of seven Credit Union employees individually.[2] Witnesses Hall and Parker tentatively identified Amrine as one of the robbers, based

Robert G. Ulrich, U.S. Atty., E. Eugene Harrison, Asst. U.S. Atty., Kansas City, Mo., for appellee.

Willard B. Bunch, Campbell, Erickson, Cottingham, Morgan & Gibson, John Edward Cash, Kansas City, Mo., for appellant.

Before LAY, Chief Judge, HENLEY, Senior Circuit Judge, and BOWMAN, Circuit Judge.

1. The Honorable D. Brook Bartlett, United States District Judge, Western District of Missouri.

2. The photographs were selected from a group of possible suspects. The officers selected the six photographs, one of which was a picture of Amrine, because an automobile belonging to Amrine's sister was recovered immediately after the robbery and "from past robberies, sequence of robberies we had in the Kansas City area with apparently the same group of suspects MO and certain individuals that I [Luther] had personal knowledge of and other detectives had, a group of photographs was selected of possible suspects." *United States v. Amrine,* No. 82–00056, slip op. at 5 (W.D.Mo. June 4, 1982).

upon his facial features and build. Another photo array was shown to the same witnesses on March 29, 1982. This array consisted of eleven photographs and was shown to each witness individually at the Credit Union. The eleven photographs displayed on March 29 were the six displayed on March 18 plus five additional photographs. Witnesses Hall and Parker again tentatively identified Amrine as the robber who jumped over the tellers' counter but each again stated that she would have to see the individual in person to make a positive identification.

A lineup was conducted at approximately 3:10 p.m. on March 29, 1982.[3] The lineup participants consisted of Amrine, three persons from the detention unit, and a law enforcement officer. Each person in the lineup was a black male of approximately the same height, size, and age. During the lineup each of the participants was required to face the witnesses, then turn from side to side and to speak two times, each time saying "this is a robbery." Hall and Parker were the only witnesses at the lineup and they were not told that the defendant would be in the lineup. Hall and Parker viewed the lineup at the same time but were seated at separate tables ten to fourteen feet apart. The two witnesses did not speak to each other during the lineup and it was not possible for either witness to see what the other was writing on her identification card. Each made a positive identification of Amrine as one of the robbers of the Credit Union.

On March 30, 1982 Amrine was formally charged with the robbery. Thereafter, a videotape of the lineup conducted on March 29 was shown to witnesses Calfas and Pierce, two other employees of the Credit Union. As in the actual lineup, the two witnesses were seated apart and did not speak to each other during the viewing of the videotape. They were not told Amrine would be in the lineup and they did not know who Parker and Hall had identified in the actual lineup. Both Calfas and Pierce identified Amrine as one of the robbers. All four of these witnesses testified at trial and made in-court identifications of Amrine. The government was also allowed to introduce evidence of the out-of-court identifications.

Amrine's defense was alibi, supported by the testimony of his girlfriend who stated that Amrine brought some keys to her at the approximate time of the robbery. A jury found Amrine guilty and he was sentenced to twenty years imprisonment.

Amrine contends that all identification evidence relating to the videotaped lineup procedure viewed by witnesses Calfas and Pierce should have been suppressed. He alleges that since formal judicial proceedings had commenced at the time of the viewing of the videotape he had a sixth amendment right for his counsel to be present at its viewing.

 It is clear that Amrine did not have a right to counsel at the time of the actual lineup since the lineup was conducted before formal charges had been brought.[4] See Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). The videotape of the lineup, however, was shown to witnesses Calfas and Pierce after a complaint had been filed and after Amrine had been brought before a magistrate. Thus, at first blush, it might appear that Amrine's right to counsel was abrogated. However, certain types of identification procedures do not, because of their nature, trigger the sixth amendment right to counsel regardless of when they occur. Hence the taking of handwriting exemplars is not a critical stage at which the accused is entitled to counsel. Gilbert v. California, 388 U.S. 263, 267, 87 S.Ct. 1951, 1953, 18 L.Ed.2d 1178 (1967). More closely on point, the Supreme Court has held there is no right to counsel at the showing of a photographic array, either pre-charge or post-charge. United States v. Ash, 413 U.S. 300, 317–21, 93 S.Ct. 2568, 2577–79, 37 L.Ed.2d 619 (1973); see also Evans v. Janing, 489

---

3. This lineup was videotaped.

4. In any event, Amrine waived his right to counsel at that point.

F.2d 470, 473 (8th Cir.1973). Resolution of the question thus depends upon whether the videotape of the lineup is to be considered an actual lineup or is more aptly categorized as a photographic display.

The basic rationale of *Ash* is that "[s]ince the accused himself is not present at the time of the photographic display, ... no possibility arises that the accused might be misled by his lack of familiarity with the law...." *Ash, supra,* 413 U.S. at 317, 93 S.Ct. at 2577. In addition, the Court stated that the accused has sufficient opportunity at trial to contest the identification without being present at the time the photographs are shown. *Id.* at 318, 93 S.Ct. at 2577.

In *United States v. Wade,* 388 U.S. 218, 230–36, 87 S.Ct. 1926, 1933–37, 18 L.Ed.2d 1149 (1967), the Supreme Court stated the reasons why the accused needs to have counsel present at a lineup. We agree with the district court that these reasons do not apply to a videotape of a lineup.

> With the availability of the tape, defense counsel is in a position to effectively reconstruct the line-up at the trial and attack the credibility of a witness's courtroom identification. The only thing that counsel could do if present when a prospective witness listens to and views a tape of a legally conducted line-up is to observe the procedures utilized in permitting the witness to listen to and view the tape. As a defendant is not entitled to have counsel present during the display of a photographic spread to observe the manner in which the photographs are displayed to a witness, it would appear ... that he is also not entitled to have counsel present when a witness listens to and views a tape of a line-up.

*United States v. Amrine,* No. 82–00056, slip op. at 13 (W.D.Mo. June 4, 1982).

■ In addition, we have held that there is no right to counsel at the playing of a tape recorded voice array. *See United States v. Dupree,* 553 F.2d 1189, 1192 (8th Cir.), *cert. denied,* 434 U.S. 986, 98 S.Ct. 613, 54 L.Ed.2d 480 (1977). We find this reasoning applicable here since we cannot discern "any constitutionally significant difference

between post-indictment identifications based on recorded images and those based on recorded sounds." *United States v. Kim,* 577 F.2d 473, 481 (9th Cir.1978) (no right to counsel at recorded voice array). We conclude that Amrine did not have a right for counsel to be present at the display of the videotaped lineup.

■ Even where the right to counsel has not attached, if the identification procedure utilized was so suggestive as to lead to a very substantial likelihood of irreparable misidentification, an accused's due process rights may have been violated. *See, e.g., Stovall v. Denno,* 388 U.S. 293, 301–02, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967). This is a two step inquiry wherein if the court finds the identification procedure was suggestive, the second inquiry is whether, considering the totality of the circumstances, the procedure gave rise to a substantial likelihood of irreparable misidentification. *United States v. Henderson,* 719 F.2d 934 at 936 (8th Cir.1983); *United States v. Hadley,* 671 F.2d 1112, 1115 (8th Cir.1982); *United States v. Love,* 692 F.2d 1147, 1150 (8th Cir.1980). Reliability is the "linchpin" of the test. *Manson v. Braithwaite,* 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977).

Both Magistrate Hamilton and Judge Bartlett reviewed the identification procedures utilized here and found that they were not impermissibly suggestive. We have carefully reviewed the photographs selected for the arrays, the persons selected to appear in the lineup, and the manner in which the photo displays and the lineup was conducted. We agree with the district court that the procedures used here were not impermissibly suggestive. We therefore do not reach the second inquiry of the due process test.

Amrine makes many contentions with respect to the suggestiveness of the two photo displays and the lineup. We have carefully considered all of his arguments and find them to be unpersuasive. Some of Amrine's suggestions are logical and if implemented might lessen the alleged suggestive-

ness of the identification procedures.[5] However, we do not believe that they rise to the level of constitutional requirements which would require a reversal here.

Affirmed.

---

**5.** Some of Amrine's suggestions include (1) having the police tell the witnesses before an identification is to be made that justice is done as much by releasing the innocent as by convicting the guilty; (2) mentioning an appropriate way to mark the identification card if there was no identification made; (3) use of a "blank" lineup; a blank lineup consists entirely of non-suspects which is shown to witnesses before or after the lineup in which a suspect is placed; and (4) not allowing the witnesses to see a photographic array containing a suspect's picture before viewing a lineup.