**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Gregory Richard BARKER,
Defendant–Appellant.**

No. 92–10135.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 17, 1992.

Decided March 9, 1993.

Arthur Allen, argued, John C. Lambrose, Asst. Federal Public Defender, Las Vegas, NV, for defendant-appellant.

Howard J. Zlotnick, argued, Thomas M. O'Connell, Asst. U.S. Atty., Las Vegas, NV, for plaintiff-appellee.

Before: NORRIS, BEEZER, and KLEINFELD, Circuit Judges.

BEEZER, Circuit Judge:

Defendant Gregory Richard Barker appeals his convictions on three counts of bank robbery under 18 U.S.C. § 2113(a) (1992). He claims that the prosecutor acted improperly in having a prosecution witness view a photo of a lineup after Barker had been indicted when Barker's counsel was not present and when Barker was not given notice of the identification before trial. He also asserts that the district court abused its discretion in allowing the audio playback of testimony during jury deliberations. We affirm.

I

Barker contends that the district court should have granted his motion for a mistrial on the ground that his Sixth Amendment rights were violated when a prosecution witness, Tomory, was shown a photograph of a lineup and made a positive identification of Barker. The post-indictment identification occurred when neither Barker nor his attorney were present and had no notice that the identification might occur. Tomory had been unable to pick Barker out of a live lineup previously.

The district court's denial of the motion for a mistrial is reviewed for abuse of discretion. *United States v. Homick*, 964 F.2d 899, 906 (9th Cir.1992).

The Sixth Amendment gives defendants the right to have counsel present at post-indictment lineups. *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). The Supreme Court in *United States v. Ash*, 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973), however, held that a defendant has no Sixth Amendment right to have counsel present when a witness views a photograph. *Id.* at 321, 93 S.Ct. at 2579.

This case is a hybrid: it involves a photograph of a lineup. The fact that the lineup is depicted in the photograph, though, does not call into question the reasoning behind the decision in *Ash*. Counsel

must be present where there is a potential "that the accused might be misled by his lack of familiarity with the law or overpowered by his professional adversary," or where counsel would "produce equality in a trial-like adversary confrontation." *Id.* at 317, 93 S.Ct. at 2577. Here, as in *Ash*, the defendant is not present when the photograph of the lineup is shown and thus cannot be "misled" or "overpowered," and the "adversary mechanism remains as effective for a photographic display as for other parts of pretrial interviews" whether the photos concerned are of a lineup or an array of suspects. *Id.* at 318, 93 S.Ct. at 2578; *see also United States v. Amrine*, 724 F.2d 84 (8th Cir.1983) (defendant had no right to have counsel present when witnesses were shown a videotape of a lineup). We conclude that a defendant has no right to have counsel present when a witness is shown a photograph of a lineup.

II

Aside from the constitutional right to counsel claims, Barker asserts that the prosecutor had a duty to divulge the fact of the identification under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), and the Jencks Act, 18 U.S.C. § 3500 (1992), as set out in the discovery agreement between the prosecutor and the defense.

Under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87, 83 S.Ct. at 1196. By its own terms, *Brady* only applies to evidence "favorable to an accused." A prosecutor has no duty under *Brady* to inform the defendant that a witness who had earlier failed to pick the defendant out of a lineup later identified the defendant as the perpetrator because that evidence is not "favorable to an accused."

Barker cites, too, the cases holding that the prosecutor must disclose impeachment evidence. *See, e.g., Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972) ("When the 'reliability of a given witness may well be determinative of guilt or innocence,' nondisclosure of evidence affecting credibility falls within this general rule." (citation omitted)). Again, though Tomory's testimony may have been "determinative of guilt or innocence," a positive identification of the defendant is hardly useful to impeach Tomory. The purpose of the *Giglio* line of cases is to make clear that the duty imposed on the prosecution in *Brady* extends not only to exculpatory information about the defendant but also to information about witnesses which would undermine the government's case. *Giglio* does not give the defendant the right to know about information which would help solidify the government's case. Tomory's prior failure to identify the defendant was useful to impeach his subsequent identification, and was used that way at trial.

Barker also relies on the provisions of the Jencks Act to support his contention that the successful identification should have been disclosed to the defense. However, the Jencks Act requires only that a witness' statement be "subject to ... discovery following the witness' testimony on direct examination." *United States v. Burke*, 506 F.2d 1165, 1168 (9th Cir.1974), *cert. denied*, 421 U.S. 915, 95 S.Ct. 1576, 43 L.Ed.2d 781 (1975); 18 U.S.C. § 3500(a) (1992). There is thus no ground for a mistrial under the Jencks Act based on the prosecutor's failure to provide this information before trial.

Barker did have due process rights in this identification process. A defendant's due process rights are violated "when the identification procedure creates a 'very substantial likelihood of irreparable misidentification.'" *United States v. Johnson*, 820 F.2d 1065, 1072 (9th Cir.1987) (citation omitted). The procedure may not be "unnecessarily suggestive." *Id.* Barker does not allege that the identification procedure was in fact suggestive, aside from the bare fact that Tomory initially could not identify the defendant from the lineup and subsequently did just that. This incongruity was drawn out on cross examination, and Tomory denied at trial that the procedure was in any way suggestive. The district court found that the procedure was not suggestive.

Barker also alludes to a Fifth Circuit opinion in which that court held that "the exclusion of counsel from post-lineup interviews is impermissible unless counsel is allowed to interview the witnesses afterward and is able to cross-examine them at trial about the identification procedure." *Daigre v. Maggio*, 705 F.2d 786, 788 (5th Cir.1983). The Fifth Circuit in *Daigre* based its holding on "the existence of the right to counsel at the lineup." *Id.* As explained above, there is no right to have counsel present at the viewing of a photograph of a lineup.

III

Barker claims that the district court erred in allowing the testimony of prosecution witness Bradley to be played back at the request of the jury. The district court's decision is reviewed for abuse of discretion. *United States v. Castillo*, 866 F.2d 1071 (9th Cir.1988). We have stated that a "trial court is given great latitude in deciding whether to reread testimony requested by the jury." *United States v. Nolan*, 700 F.2d 479, 486 (9th Cir.), *cert. denied*, 462 U.S. 1123, 103 S.Ct. 3095, 77 L.Ed.2d 1354 (1983); *United States v. King*, 552 F.2d 833, 850 (9th Cir.1976). "In general, rereading is disfavored because of the emphasis it places on specific testimony and the delay it causes in the trial," *id.*, although the decision must be made on a case by case basis. *United States v. Binder*, 769 F.2d 595, 600 (9th Cir.1985).

Barker relies on *Binder* to support his contention that the district court abused its discretion in allowing the playback. In *Binder* we held that the district court had abused its discretion when it allowed the jury to play back in the jury room such portions as the jurors chose of the videotaped testimony of key prosecution wit-

nesses, because this might unduly emphasize particular testimony. *Id.* at 600–01. Here, the witness' entire testimony was played back with the parties present in open court and there was no video component. *See Binder,* 769 F.2d at 601 n. 1 (distinguishing videotape from audiotape). It is important to note that in this case both the entire direct and the entire cross examination were played back to the jury. *See United States v. Nickell,* 883 F.2d 824, 829 (9th Cir.1989) ("The trial court made an effort to avoid undue emphasis on any single portion of the witness's testimony by including excerpts from both the direct and cross-examination" when reading back testimony during deliberations). The district court consulted counsel and was aware of the defendant's concerns. *See U.S. v. Sacco,* 869 F.2d 499, 503 (9th Cir.1989). As a trial judge is given "great latitude" in this area, there was no abuse of discretion in allowing the testimony to be played back.

The district court judgment is

AFFIRMED.