849 So.2d 438 (2003)
The STATE of Florida, Appellant,
v.
Nathaniel Charles JONES, Appellee.
No. 3D02-2092.
District Court of Appeal of Florida, Third District.
July 16, 2003.
*439 Charles J. Crist, Jr., Attorney General, and Erin K. Zack, Assistant Attorney General, for appellant.
Bennett H. Brummer, Public Defender, and Billie Jan Goldstein, Assistant Public Defender, for appellee.
Before SCHWARTZ, C.J., and COPE, LEVY, GERSTEN, GODERICH, GREEN, FLETCHER, SHEVIN and RAMIREZ, JJ.

EN BANC
SHEVIN, Judge.
The State of Florida appeals an order suppressing Officer Rubinson's out-of-court video taped lineup identification of defendant Nathaniel Charles Jones. We reverse.
On November 6, 2000, at 9:00 p.m., Officer Rubinson of the Miami-Dade Police Department was in a police cruiser responding to an armed robbery call when he saw a white car proceeding in the opposite direction at a high rate of speed. The priority call described the robbery suspects as two black males in a white Acura. Rubinson pursued the car until his cruiser crashed. He observed the driver of the car whom he later identified as Jones. Approximately one week later, Rubinson saw a "career criminal auto theft" BOLO flier distributed by automobile theft Detectives Villegas and Fernandez with six photographs including a photograph of Jones. The flier also stated that Jones had previously been arrested for shooting at a policeman.
Subsequently, Jones participated in a video tape lineup after he was arrested and charged with several burglaries. Those charges were dropped. Shortly thereafter, Jones was charged with robbery and armed assault after one of the robbery victims identified him. Those crimes had occurred the evening Rubinson observed Jones driving the speeding car.
In the Fall of 2001, Jones disclosed six alibi witnesses. On February 15, 2002, after deposing Jones' alibi witnesses, the state attorney held a meeting at his office with Rubinson and Detectives Villegas and Fernandez to discuss the case; the detectives had arrested Jones several times for auto theft. At that meeting, the officers discussed their involvement in the case. After Rubinson's involvement became apparent, he was then shown the video tape lineup in which Jones had participated; Detectives Villegas and Fernandez sat at the same table with Rubinson as he viewed the video tape. Rubinson identified Jones as the person he saw driving the speeding car. The state informed Jones of the newly-acquired identification. The trial was continued and Jones sought to suppress the identification based on the detectives' *440 bias against Jones and the detectives' presence while Rubinson viewed the video tape lineup.
The court held an evidentiary hearing at which the officer and detectives testified. The detectives testified that they did not influence Rubinson's video tape identification of Jones in any way. Detective Fernandez denied stating that he was "going to get [Jones] off the street for good." Detective Villegas stated that he would say that he would like to get Jones off the street if he committed a crime.
Rubinson testified that he knew that Jones had been charged in the case and what Jones looked like from the BOLO; he stated that he viewed the video tape after chatting with, and in the presence of, the auto theft detectives. Rubinson also testified that he had not told the lead robbery detective that he could identify the perpetrator in this case when she interviewed him just after the chase, that he did not contact her after he saw Jones' picture in the BOLO, and that he did not write a report. Rubinson believed that he told his Captain that he thought that he recognized Jones. He testified that he glimpsed at the driver for only about a second as he drove in the opposite direction at 45 miles per hour. Although it was dark, Rubinson stated that he could see the driver's face as he drove by the cruiser because the cruiser's spotlight and the interior light of the white car were illuminated. Rubinson testified that he identified Jones based solely on what he saw the night of the chase.
The court suppressed the out-of-court identification stating:
With regard to Officer Rubinson's video identification of the defendant, the Court finds that, under all the circumstances of this case, the passage of months between the crime and the viewing of the video lineup, coupled with the presence of two auto theft detectives who had previously arrested the defendant several times for auto theft and appear to have a bias against defendant, it does not make for an accurate or believable identification. Rubinson's video identification took place approximately fifteen (15) months after his initial encounter with the defendant on November 6, 2000, and his viewing of the six person photographic BOLO flyer one week later, respectively. Therefore, the Court finds that the criteria laid down in Biggers are not satisfactorily complied with here.
On appeal, the state argued that nothing suggestive happened during Rubinson's viewing of the video tape lineup. Jones answered contending that the lineup procedure was unduly suggestive, and that the lineup was without notice or counsel's presence, relying on Cox v. State, 219 So.2d 762 (Fla. 3d DCA 1969), and State v. Gaitor, 388 So.2d 570 (Fla. 3d DCA 1980). In its reply, the state requested that this court recede from Cox and Gaitor in light of United States v. Ash, 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973).
A panel of this court heard oral argument and referred the case to the court for en banc consideration. The en banc court directed the parties to file supplemental briefs addressing whether the court should recede from Cox in light of Ash. We grant hearing en banc.

I. Right to Counsel
At issue is whether Jones had a right to have counsel present when the officer viewed the video taped lineup. We reject Jones' assertion that the absence of his counsel was a ground for granting the suppression motion. We hold that a witness' viewing of a video taped lineup is not a crucial or critical stage triggering a defendant's right to have counsel present *441 under either section 16 of Article I of the Florida Constitution, or the Sixth Amendment of the federal constitution. In so holding, we follow Ash and recede from this court's earlier ruling to the contrary in Cox and Gaitor.
Under the state constitution, a defendant's right to counsel's presence applies at each crucial stage of the proceedings; under the federal constitution, defendant is entitled to counsel at each critical stage of the proceeding. Smith v. State, 699 So.2d 629, 638 (Fla.1997), cert. denied, 523 U.S. 1008, 118 S.Ct. 1194, 140 L.Ed.2d 323 (1998); Traylor v. State, 596 So.2d 957, 968 (Fla.1992); Ash. It is well settled that viewing a post-charge/arrest live lineup is a critical or crucial stage, and that viewing a photographic display is not a critical or crucial stage. Here, however, we must determine whether the viewing of a video taped lineup constitutes such a stage of the proceeding.
In Cox, this court held that a defendant is entitled to be represented by counsel when a video tape recording of a lineup is shown to a witness instead of a live lineup or other confrontation. Subsequently, we explained Cox stating that
[i]n Cox v. State, this court held that a person who has been arrested and `booked' is entitled to have counsel present when a video tape lineup in which he appears is shown to state witnesses as a substitute for a live lineup. In view of the holdings in Wade and Gilbert, ... this court took the view that what the police could not do directly, they should not be allowed to do indirectly through the miracles of modern science. Although Cox still remains good law, it must be read to apply only to post-charge video tape lineups.
Gaitor, 388 So.2d at 571 (citation omitted). In continuing to hold that Cox was good law, however, the Gaitor court failed to address the intervening Ash decision.
In Ash, 413 U.S. at 321, 93 S.Ct. 2568, the Court held that defendant has no Sixth Amendment right to counsel when a witness views a photographic display in order to identify the perpetrator. The Court reasoned that
[a] substantial departure from the historical test would be necessary if the Sixth Amendment were interpreted to give Ash a right to counsel at the photographic identification in this case. Since the accused himself is not present at the time of the photographic display, and asserts no right to be present ..., no possibility arises that the accused might be misled by his lack of familiarity with the law or overpowered by his professional adversary.

* * *
We are not persuaded that the risks inherent in the use of photographic displays are so pernicious that an extraordinary system of safeguards is required.
Ash, 413 U.S. at 317, 321, 93 S.Ct. 2568.
We agree with the state that the video tape of the lineup is more appropriately analyzed as a photographic display rather than a live lineup. There is no significant distinction between a photographic display and a video taped lineup. Both identification procedureseither photographic or video tapeserve as a substitute for viewing a suspect in a live lineup. Each procedure is merely a re-creation of a live lineup and the defendant is not present during the identification procedure. Therefore, there is no "possibility that the accused might be misled by his lack of familiarity with the law." Ash, 413 U.S. at 317, 93 S.Ct. 2568. Accordingly, we conclude that Ash is applicable to this case. See Ash, 413 U.S. at 301 n. 2, 93 S.Ct. 2568; United States v. Amrine, 724 F.2d 84 (8th Cir. *442 1983); Bruce v. State, 268 Ind. 180, 375 N.E.2d 1042, 1086, cert. denied, 439 U.S. 988, 99 S.Ct. 586, 58 L.Ed.2d 662 (1978); McMillian v. State, 83 Wis.2d 239, 265 N.W.2d 553, 558 n. 1 (1978). See also United States v. Barker, 988 F.2d 77 (9th Cir.1993); Merritt v. State, 76 S.W.3d 632 (Tx.Ct.App.2002)(video tape of lineup is similar to a photographic display). As a result, we hold that Jones did not have a Sixth Amendment right to counsel's presence when Rubinson viewed the video taped lineup.
Jones correctly argues that we are not required to construe our state constitution's Counsel Clause in the same manner as the Supreme Court interprets the concomitant federal constitutional right.[1] However, we find the reasoning of the Ash Court persuasive and perceive no intent that the Counsel Clause should be treated differently. See Lebron v. State, 799 So.2d 997, 1011 (Fla.2001), cert. denied, 535 U.S. 1036, 122 S.Ct. 1794, 152 L.Ed.2d 652 (2002). In explaining the Ash decision, the Court stated:
Although we have extended an accused's right to counsel to certain `critical' pretrial proceedings, we have done so recognizing that at those proceedings, `the accused [is] confronted just as at trial, by the procedural system, or by his expert adversary, or by both,' in a situation where the results of the confrontation `might well settle the accused's fate and reduce the trial itself to a mere formality.'
United States v. Gouveia, 467 U.S. 180, 188-89, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984) (citations omitted). Similarly, in this case, Jones was not confronted with the procedural system or his expert adversary the results of which could reduce the trial to a mere formality. See Traylor, 596 So.2d at 967 (for purposes of Counsel Clause "a `crucial stage' is any stage that may significantly affect the outcome of the proceedings"). The need for counsel to witness potentially suggestive procedures and to represent the defendant in an adversary confrontation is absent in this case. The former function is obviated by accurate reconstruction of the lineup and the latter function is unnecessary by virtue of defendant's absence. Thus, this was not a crucial or critical stage requiring counsel's presence. See Rodriguez v. State, 413 So.2d 1303 (Fla. 3d DCA 1982)(court cited Ash and stated that there is no right to counsel at photographic displaysa non-critical stage); Griffin v. State, 370 So.2d 860 (Fla. 1st DCA 1979)(same). See also Stewart v. State, 549 So.2d 171, 173 (Fla.1989)(relying on Ash, court held that defendant's post-first appearance conversations were not obtained in violation of his Sixth Amendment right to counsel as "[t]here was no point at which prosecution and accused interacted."), cert. denied, 497 U.S. 1032, 110 S.Ct. 3294, 111 L.Ed.2d 802 (1990).

II. Lineup Procedure
In support of reversal, the state also argues that the video tape identification procedure was not unnecessarily suggestive. We agree. The test for suppressing an out-of-court identification is "(1) whether the police used an unnecessarily suggestive procedure to obtain the out-of-court identification; and (2) if so, considering all the circumstances, whether the suggestive procedure gave rise to a substantial likelihood of irreparable misidentification." Rimmer v. State, 825 So.2d 304, 316 (Fla.), cert. denied, 537 U.S. 1034, 123 S.Ct. 567, 154 L.Ed.2d 453 *443 (2002). In this case, we need not consider part two of the test because the procedures used by the police were not unnecessarily suggestive. Rimmer, 825 So.2d at 316; Thomas v. State, 748 So.2d 970, 981 (Fla.1999).
The record provides no basis for the trial court's conclusion that the lineup procedure was unnecessarily suggestive. It is well-settled law that, absent inapplicable exceptions, a "trial court is required to accept evidence which has not been impeached, discredited, controverted, contradictory within itself or physically impossible." State v. Casey, 821 So.2d 1187, 1188 (Fla. 3d DCA 2002); State v. G.H., 549 So.2d 1148 (Fla. 3d DCA 1989); State v. Fernandez, 526 So.2d 192, 193 (Fla. 3d DCA), cause dismissed, 531 So.2d 1352 (Fla.1988), and cases cited therein. As noted by the trial court in its order,
Officer Rubinson testified that he appeared at the Office of the State Attorney for a pretrial conference on February 15, 2002, when he again saw the BOLO flyer and for the first time a video taped live lineup of the defendant. Officer Rubinson stated that present at the showing of the video lineup were Miami-Dade Police Department auto theft detectives Tony Fernandez and Angel Vellegas, and Assistant State Attorney Jay Novick who played the video tape for him. He further explained that he identified number four, the defendant, as the driver of the white Acura on the night of November 6, 2000. He also testified that no one present in the room suggested whom he should identify nor did anyone tell him that he identified the defendant in this case.
Detectives Fernandez and Vellegas both testified that they were present for the video showing, but (sic) of them neither participated in the identification procedure nor did they speak to officer Rubinson about his identification.
That testimony was not impeached, discredited, controverted, contradictory within itself or physically impossible. The trial court was required to accept the detectives' and officer's testimony; nothing in the record supports a finding contrary to their testimony describing the lineup procedure. All of the witnesses testified that no person attending the lineup did anything to help Rubinson identify Jones. They did not influence Rubinson's identification by statement, gesture or visual suggestion. Based on this testimony, no ground exists for the legal conclusion that the lineup was unnecessarily suggestive and influenced Rubinson's identification of Jones. See Thomas, 748 So.2d at 981 (photographic lineup not unnecessarily suggestive where officer did not suggest which photograph witness should pick); Green v. State, 641 So.2d 391 (Fla.1994)(police did not use unnecessarily suggestive procedure where there is no indication officers directed witnesses' attention to particular photograph), cert. denied, 513 U.S. 1159, 115 S.Ct. 1120, 130 L.Ed.2d 1083 (1995); Evans v. State, 781 So.2d 493 (Fla. 3d DCA 2001)(same). Therefore, we hold that the procedure employed in obtaining the out-of-court identification was not unnecessarily suggestive. Accordingly, the trial court erred in granting the suppression motion on this basis.

III. Conclusion
In summary, we recede from Cox and Gaitor, follow Ash, and hold that Jones did not have a right to counsel when the officer viewed the video taped lineup and that the procedure for viewing the lineup at issue was not suggestive. We, therefore, reverse the suppression order.
Reversed and remanded.
NOTES
[1] In Traylor v. State, 596 So.2d 957, 962 (Fla. 1992), the Court stated that the federalist principles give primacy to the Florida Constitution and that "the federal Constitution ... represents the floor for basic freedoms; the state constitution the ceiling."