LEWIS, J.,
dissenting.
Despite the clear constitutional authority to review the instant matter based upon the Third District’s express construction of the right to counsel provision of the Florida Constitution, see art. V, § 3(b)(3), Fla. Const., this Court has decided against exercising its discretion to consider and resolve the case on the merits. I certainly understand and respect the majority’s decision but, in my view, discharging jurisdiction here is a mistake. A full analysis of the Third District’s decision is not only worthy of this Court’s discretion, but such consideration is necessary to ensure that the district court’s invocation of certain cases from other states — cases which, in my view, violate fundamental right to counsel principles — does not cloud the law in this state on this very important constitutional protection. By discharging jurisdiction, this Court fails to seize the opportunity to satisfy its responsibility to ensure the integrity of criminal proceedings in this state, and simply delays for another day consideration of a question now squarely before the Court. We also create the very real risk that constitutional violations may remain in the dark through per curiam decisions.
The district court below considered whether the right to counsel guaranteed by Florida’s Constitution requires counsel’s presence when a witness is shown a videotaped lineup of a criminal defendant for identification purposes. The crucial facts bearing on the instant analysis are as follows. On the evening of November 6, 2000, Officer Rubinson of the Miami-Dade police department responded to an armed robbery call and observed a white car matching the description of the suspects’ car fleeing the scene. As the car passed the officer, he observed the driver for approximately one second before making a u-turn and giving chase. The chase ended when the officer crashed his police cruiser. One week later, Rubinson saw a “career criminal auto theft” BOLO flyer distributed by the auto theft task force at department roll call. The flyer had six photographs, including a photograph of the petitioner, Jones, whom Rubinson recognized as the driver of the fleeing car.
Thereafter, Jones was charged with crimes unrelated to the November 6 incident and was appointed counsel. On the basis of information developed through the police investigation of the November 6 robbery, the State sought to compel Jones to participate in a live lineup procedure to be viewed by the victims of that crime — a crime for which Jones was a suspect but had not yet been charged. Jones participated in the live lineup procedure, during which his court-appointed counsel was present. After being identified by one of *808 the two victims as the perpetrator of the November 6 robbery, Jones was immediately charged with robbery and armed assault. The lineup procedure was videotaped.
■ Prior to trial on the robbery and assault charges, Jones disclosed six alibi witnesses. On February 15, 2002, after deposing Jones’s alibi witnesses, the state attorney held a meeting in his office with several law enforcement officers, including Rubinson, and two auto theft detectives, Villegas and Fernandez. Villegas and Fernandez knew Jones and had arrested him on previous occasions, but were not involved in the November 6 robbery and assault case. According to Rubinson, the purpose of the meeting was to determine who was involved in the police chase on the night of November 6, 2000.
Immediately after confirming that Rubinson was the officer involved, he was shown the videotape of the lineup in which Jones had participated. Villegas and Fernandez remained in the room, but were instructed not to say anything. After viewing the tape, Rubinson identified Jones as the man he observed speeding away when he responded to the November 2000 call. This procedure enhances the need for our judicial analysis.
Jones submitted a motion to suppress Rubinson’s identification. The trial court held an evidentiary hearing during which Rubinson, Villegas, and Fernandez testified. Both Villegas and Fernandez testified that they did not speak or make any gestures toward Rubinson as he viewed the tape. The detectives were also given the opportunity to explain certain statements they allegedly made about Jones.
At the close of the hearing, the trial court suppressed the identification Rubin-son had made from the videotape. The trial court determined that the identification was not accurate or believable given the circumstances of the case, including the passage of fifteen months between the crime and the viewing of the video lineup, coupled with the presence of two auto theft detectives who had previously arrested Jones and appeared to have a bias against him. While the trial court excluded the identification from the videotape, the trial court ruled that it would permit the officer to testify based on what he personally observed the night of November 6, 2000, as well as his identification of Jones from the BOLO flyer he saw approximately one week later.
On appeal of the order suppressing the identification, Jones argued that the video lineup procedure was unduly suggestive. Jones further argued that the videotape was shown in the absence of counsel’s presence in violation of Cox v. State, 219 So.2d 762 (Fla. 3d DCA 1969), in which the district court held that an accused who has been arrested and booked has a right to counsel when a videotape is shown to an identifying witness as a substitute for a live lineup procedure, and State v. Gaitor, 388 So.2d 570 (Fla. 3d DCA 1980), in which the Third District confirmed the continued validity of Cox, but limited it to instances involving post-charge videotape lineups. The State, in turn, asked the district court to recede from Cox and Gaitor and apply the rule established by the United States Supreme Court in United States v. Ash, 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973), where the High Court held that a defendant has no right to counsel under the Sixth Amendment to the United States Constitution when a witness views a photographic display for identification purposes. See id. at 321, 93 S.Ct. 2568.
The Third District, sitting en banc, held that the display of a videotaped lineup to a witness for identification purposes was not a “crucial stage” in the prosecution that would trigger the right to counsel under *809 article I, section 16 of the Florida Constitution. See State v. Jones, 849 So.2d 438, 440-41 (Fla. 3d DCA 2003). The district court extended the reasoning and outcome of Ash to the instant scenario — which involved the display of a videotaped lineup. In so doing, the district court receded from its earlier rulings to the contrary in Cox and Gaitor.[1] See id.
While I am not troubled by the district court’s conclusion, or the majority of the district court’s analysis, I am concerned with its citation to a number of cases from other state courts in support of the proposition that Ash is applicable to videotaped lineups and the procedure implemented for that view under these circumstances. Specifically, the district court invoked without explanation[2] or limitation Bruce v. State, 268 Ind. 180, 375 N.E.2d 1042 (1978); Merritt v. State, 76 S.W.3d 632 (Tex.App.2002); and McMillian v. State, 83 Wis.2d 239, 265 N.W.2d 553 (1978). Each of these cases reaches a conclusion that I believe violates the fundamental right to counsel principles set forth in Ash and its precursor decision, United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). Although the full extent of the Third District’s reliance on these opinions may be debated, it is critical to address this aspect of the district court’s decision to ensure that courts in this state do not apply the same faulty analysis in subsequent cases, and thereby derogate from the right to counsel protections guaranteed by the Florida Constitution particularly with the procedure used in this case.
In Wade, the Supreme Court held that a post-indictment live lineup constituted a “critical stage” of the prosecution requiring assistance of counsel. See id. at 236, 87 S.Ct. 1926. As a basis for its analysis, the Wade Court drew on the decision in Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), where the Court characterized the period from arraignment to trial as “ ‘perhaps the most critical period of the proceedings ... ’ during which the accused ‘requires the guiding hand of counsel ... ’ if the [counsel] guarantee is not to prove an empty right.” Wade, 388 U.S. at 225, 87 S.Ct. 1926 (quoting Powell, 287 U.S. at 57, 69, 53 S.Ct. 55). The Supreme Court acknowledged that it had extended the principle articulated in Powell to a variety of non-trial situations, including: arraignment (Hamilton v. Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961), and White v. Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963)); post-indictment interrogation (Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d, 246 (1964)); pre-indictment interrogation where the defendant specifically requests counsel (Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964)); and custodial interrogation where the right to counsel was imposed through the Fifth, not the Sixth, Amendment (Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)). In the words of the Wade Court:
It is central to that principle [articulated in Powell\ that in addition to counsel’s presence at trial, the accused is guaran *810 teed that he need not stand alone against the State at any stage of the prosecution, formal or informal, in court or out, where counsel’s absence might derogate from the accused’s right to a fair trial.
Id. at 227, 87 S.Ct. 1926 (footnote omitted).
In Ash, the Supreme Court acknowledged that the right to counsel had been extended to events occurring prior to trial, but determined that the expansion was limited to those events where the accused was “confronted, just as at trial, by the procedural system, or by his expert adversary, or by both.” 413 U.S. at 310, 93 S.Ct. 2568; see also United States v. Gouveia, 467 U.S. 180, 188-89, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984) (“We have recognized that the ‘core purpose’ of the counsel guarantee is to assure aid at trial, ‘when the accused [is] confronted with both the intricacies of the law and the advocacy of the public prosecutor.’ ”) (quoting Ash, 413 U.S. at 309, 93 S.Ct. 2568). The Ash Court reasoned that in such “trial-like” confrontations, the function of the lawyer remains essentially the same as his function at trial— to act as a spokesman for, or advisor to, the accused. See id. at 312, 93 S.Ct. 2568. According to the Court, the traditional test to emerge from these previous right to counsel cases focuses on whether the accused requires “aid in coping with legal problems or assistance in meeting his adversary.” Id. at 313, 93 S.Ct. 2568. On this basis, the Ash Court held that the Sixth Amendment does not require counsel’s presence at photographic displays. See id. at 321, 93 S.Ct. 2568.
In extending Ash to the context of videotaped lineups, the state courts in Indiana, Wisconsin, and Texas concluded that the right to counsel guarantee applies to neither the display nor the creation of such tapes. Notably, in McMillian, the Supreme Court of Wisconsin considered whether “a criminal defendant is constitutionally entitled to be represented by counsel at the staging or viewing of an audio-videotaped lineup.” 265 N.W.2d at 555 (emphasis supplied). Viewing the decisions in Ash and Wade along with its own state caselaw, the court explained that defense counsel was historically required at live lineups to observe the circumstances of the proceeding so that it could be reconstructed at trial or in a prehearing motion. See id. at 556. The court contrasted counsel’s historic role with that of the recorded audio/video image, which the court characterized as “more observant, more objective, more retentive and hence more reeon-structible than a live lineup ... [and] of more effective assistance in the making of the ultimate judicial determination of suggestiveness than the personally recalled observations of either state witnesses or defense counsel.” Id. at 557. On this basis, the Court held,
We conclude that the reconstructibility of the videotape lineups and the physical absence of the defendant at the viewing are more closely analogous to a photographic view than to the confrontation established by a live lineup. The result is that the presence of counsel at either the taping or the viewing of an audio-video recording is not constitutionally mandated.
Id. at 558.
The Supreme Court of Indiana echoed that refrain in Bruce, stating, “The existence of a video tape recording will insure accurate reconstruction of the line-up and deter abuses no less effectively than the witnessing of the procedure by the suspect’s counsel.” 375 N.E.2d at 1086. On that basis, the Bruce court held that an identification proceeding preserved on videotape is not a “critical stage” in the criminal proceeding. See id.; see also Merritt v. State, 76 S.W.3d 632 (Tex.App.2002) (de *811 termining that the videotaping of a lineup where no witness is present and where the tape is not subsequently shown to a witness is not a critical stage requiring-counsel).
I believe the conclusion reached by these courts misconstrues the fundamental principle underlying the decisions in both Wade and Ash — that a criminal defendant need not stand alone without the assistance of counsel when he is “confronted, just as at trial, by the procedural system, or by his expert adversary, or by both.” Ask, 413 U.S. at 310, 93 S.Ct. 2568. Contrary to the interpretive gloss applied in those decisions from other states, the Ash Court did not conclude that the “criticality” determination turns on whether the government’s procedure can be accurately reconstructed at trial. Instead, the Court made clear that the focus remains on whether or not the accused has been “confronted” by the criminal process:
The structure of Wade, viewed in light of the careful limitation of the Court’s language to “confrontations,” makes it clear that lack of scientific precision and inability to reconstruct an event are not the tests for requiring counsel in the first instance. These are, instead, the tests to determine whether confrontation with counsel at trial can serve as a substitute for counsel at the pretrial confrontation. If accurate reconstruction is possible, the risks inherent in any confrontation still remain, but the opportunity to cure defects at trial causes the confrontation to cease to be “critical.”
Id. at 315-16, 93 S.Ct. 2568 (footnote omitted). The Wade Court itself acknowledged:
Legislative or other regulations, such as those of local police departments, which eliminate the risks of abuse and unintentional suggestion at lineup proceedings and the impediments to meaningful confrontation at trial may also remove the basis for regarding the stage [lineups] as “critical.”
Wade, 388 U.S. at 239, 87 S.Ct. 1926.
However, it is unlikely that having the police themselves, without the presence of counsel, videotape lineup procedures would eliminate the “risk of abuse and unintentional suggestion” in the manner envisioned by the Court in Wade. To the contrary, videotaping the procedure simply makes a record, but does not eliminate suggestivity and other types of possible impropriety as counsel’s presence may accomplish. While the existence of a videotaped record of the procedure may aid in the application of existing due process standards to determine whether an improper identification should be excluded, I believe the right to counsel guarantee requires counsel’s presence to provide the accused guidance, and ensure fairness, during such a confrontation with the state during the creation of the video just as for live lineup procedures. Also, let us not forget that the video camera is not all-seeing. There may be improper conduct that occurs outside the gaze of the camera lens that would be forever lost to those reviewing the process. ■' Ultimately, the reasoning employed by these state courts will create an environment in which the video camera is wrongly perceived as an acceptable substitute for the guiding hand of counsel in direct contravention of the rule established in Wade.
I certainly acknowledge that Jones was accompanied by counsel during the creation of the videotaped lineup in the instant matter. That fact does not, however, mean the legal problem posed by the un-counseled creation of a videotaped lineup is not squarely before the Court with the authority relied' upon below. It is simply a matter of time before a case presents itself in which, either in the name of expediency *812 or in an attempt to circumvent the counsel requirements of Wade, a criminal defendant is brought before law enforcement officials and subjected to a videotaped lineup procedure without benefit of counsel. The decision below along with its reliance upon those expansive decisions from other states and the procedure utilized for viewing will stand as authority. A judicial officer will then be called upon to decide whether such a procedure violates the defendant’s constitutional right to counsel. Logic and judicial economy dictate addressing this important question now due to the expansive authority utilized below to assist prosecutors, law enforcement officers, defense attorneys, judges, and all residents in this state in ensuring that identification procedures comport with constitutional requirements. Accordingly, I dissent from the Court’s decision discharging jurisdiction.

. The Third District also rejected Jones' claim that the videotape identification procedure was unnecessarily suggestive. The district court based its determination on the testimony of the officers, who uniformly indicated that no one said anything or engaged in any conduct that would have influenced Rubin-son's identification. See Jones, 849 So.2d at 443.

. The district court also cited the cases in United States v. Barker, 988 F.2d 77 (9th Cir.1993); and United States v. Amrine, 724 F.2d 84 (8th Cir.1983). However, neither of these cases reaches the same flawed conclusion as the state court cases, and will not be discussed further herein.