COURT OF APPEALS
DECISION
DATED AND FILED

February 26, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP436**

Cir. Ct. No. 2023SC3370

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

JAMES R. FRISO,

PLAINTIFF-APPELLANT,

V.

BENNETT COACHWORKS LLC,

DEFENDANT-RESPONDENT,

BOB BENNETT,

DEFENDANT.

APPEAL from an order of the circuit court for Racine County: DAVID W. PAULSON, Judge. *Affirmed.*

¶1 GROGAN, J.[1] James R. Friso, pro se, appeals from a judgment dismissing his small claims Complaint against Bennett Coachworks, LLC (the LLC).[2] Friso's brief is difficult to decipher; however, it appears he is arguing that: (1) the LLC violated a number of WIS. ADMIN. CODE ch. ATCP 132 provisions when Friso hired it to provide a "show quality" paint job for his 1973 Plymouth Barracuda and that the circuit court erred when it, he says, refused to allow him to ask about the alleged ch. ATCP 132 violations during the court trial; and (2) new evidence exists warranting a new trial. This court affirms.

## I. BACKGROUND

¶2 Friso filed suit against the LLC, alleging that he had hired it in late September 2022 to complete a "show quality" paint job on his Barracuda, which he intended to display at a car show in early December 2022, and that the LLC's workmanship was poor.[3] The case was tried to the circuit court, and Friso, who also appeared pro se at trial, testified that he entered into the agreement with the LLC to clean, prep, mask, and paint the car. He explained that he delivered the car to the LLC late on Friday, September 30, 2022, he gave the LLC two weeks to complete the job, and he had authorized up to $3,000 in expenses. Friso also testified that despite the two-week timeline, he received a call from Ted, the

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] Friso filed the Complaint against Bob Bennett personally and the LLC, but before trial, Bob Bennett was dismissed by stipulation between the parties and by order of the circuit court.

[3] Friso's brief states that he "met with Bob Bennett on 9/14/23" to discuss the work to be done on his vehicle. He also states in his brief that he informed Bennett that "the car had to be at a sponsor car event 12/8/23." Given that Friso filed his Complaint on September 13, 2023, and in light of the testimony provided at trial, this court assumes the events described and discussed herein occurred in September through December 2022 rather than in 2023.

LLC's manager, on Friday, October 7, 2022, and that Ted informed him that the job had been completed and that he could pick up the car. Friso testified that he inspected the car when he went to pick it up and that he "was horrified" because the car had "bare spots that had no primer," "bare spots that had no top coat," and "dirt throughout the paint." Although he reported his concerns about the poor quality of the paint job to Ted, attempts to discuss the problems with the LLC were ultimately unsuccessful.[4]

¶3    Friso also testified as to his purported damages during his testimony, explaining that he had paid $3,337.47, including a $500 deposit to the LLC, which he wanted refunded, and that he was also seeking reimbursement for all the costs he incurred in having the LLC's paint job removed and the car repainted.[5]

¶4    During cross-examination, Friso admitted, upon being shown a document from his credit union, that he had already been refunded $2,837.45—everything he had paid the LLC except the $500 deposit.[6] He testified that he had forgotten about the refund when calculating his claimed damages and that he would no longer be claiming the refunded amount. Friso also testified that his contractual agreement with the LLC identified the scope of the LLC's work as "[b]asically painting frame to customer specs[,]" and that the cost would be "$78

---

[4] Friso confirmed that he did in fact "show" the car in the car show as planned despite the disappointing paint job.

[5] Although Friso testified that he paid $3,337.47, there were also references to $3,337.50 and $3,337 during the course of the trial. These minor discrepancies ultimately have no bearing on the outcome of this appeal.

[6] Friso had filed a dispute with the credit union regarding the amount paid in light of his dissatisfaction with the LLC's final product.

per hour for paint and materials[,]" and he confirmed this document was the only written contract or agreement between the parties.

¶5    After the cross-examination, the circuit court advised Friso that, as the plaintiff, he had the burden of proof and asked if he had any further testimony. Friso responded that he "would like to go through some of this commentary from Ted with regards to the -- with regards to the tape recorded phone call." The court, however, refused to allow Friso to do so, stating that it would not allow "a tape recorded phone call that Ted didn't know was being tape recorded" and explained to Friso that he could have subpoenaed Ted to appear and testify at the trial.[7]

¶6    Friso then called Bob Bennett to testify adversely. Bennett testified that he had conversations with Friso about painting his car and that Friso explained he would be taking it to a car show that December. In response to questions, Bennett explained that Friso wanted the job completed quickly and that they had discussed the LLC's wait list and whether the LLC could get Friso's car on its schedule. The circuit court noted that the contract listed the "promised date" as "ASAP."

¶7    When asked about having the car "blasted," or "stripped"[8] before it could be painted, Bennett testified that typically, the LLC would send it to a company in Detroit where the car would be chemically stripped to ensure that the

---

[7] In his appellate briefs, Friso faults the circuit court for referring to this as a recording from a phone call and explains that the recording was from an in-person discussion he had with Ted after which he had the recording transcribed. However, Friso himself referred to it as a "tape recorded phone call" and thus cannot fault the circuit court for using the same language.

[8] The terms "blasting" and "stripping" will be used interchangeably.

body was rust-free. He explained the stripping company uses a process to ensure the primer "wicks" "up into all the crevices" to get "100 percent coverage." Bennett testified that he explained this to Friso but that Friso had said he did not have time for that process and he would take care of the stripping before bringing the car to the LLC to paint.

¶8 Bennett testified that when Friso brought the car in to the LLC, it had residue from the blasting process in "every single crack, crevice and hole[.]" Bennett explained he did not expect Friso to deliver the car uncleaned and that as a result of its condition, the LLC had to spend three days trying to remove the residue, which left it only "one very long day" to do all the priming and painting due to Friso's five-day timeframe. When Friso showed Bennett post-paint photos of the car, Bennett admitted "that in the tight sections of the roll cage and in the frame and in some of the hidden panels that there was primer showing through or -- on a couple of them I think I can see some metal coming through."

¶9 When asked specifically about the five-day deadline to paint the car, Bennett testified that he was "told that many times" "from the beginning of the conversations with [Friso] because [he was] running such a tight timeline." Bennett further explained that he did not provide an "estimated completion date" because Friso told him he had "five days to do it." When asked if he had that in writing, Bennett responded that he did not, but that "three or four other staff" heard Friso say it. Friso then began to ask Bennett the following: "According to ATCP132 --[.]" However, the LLC's attorney objected, and the circuit court sustained the objection, explaining to Friso that he could not ask Bennett "legal questions[.]"

¶10     When Friso asked Bennett why he did not call Friso to discuss that cleaning the car had consumed so much of the week, Bennett responded that he did call Friso. Bennett said Friso not only was told about the time consumed by cleaning the car, but that Friso had even come to the LLC to help clean it. Bennett further testified that he and Friso *had* discussed it and that because Friso "pressured us to get it done by Friday[,]" "we did everything we could possibly do and still get the car to the point where we had enough time that we could get paint on it and have it ready to deliver on Friday." When pressed about why the LLC proceeded to paint the car if it was not fully ready, Bennett testified: "We made the decision to push it in on Thursday and paint because we had a Friday deadline, period[,]" and that "[t]here was nothing further we could do in the time span that we were given." He also indicated that the LLC "painted it within [the] budget and within [the] time frame" Friso provided.

¶11     In addition to the foregoing, the trial transcript also reflects numerous occasions where the circuit court had to explain trial procedure/rules of evidence to Friso and a number of times where Friso's self-representation frustrated the circuit court. For example, the court noted that it might be necessary to schedule another day for the trial because Friso was "repeating and repeating and arguing" instead of asking questions, which caused the trial to take longer than the court had allotted.

¶12     At one point, Friso told the circuit court that he was "almost finished," and then they went "off the record[.]" Once back on the Record, Friso told the court he had "more stuff." The court responded: "Well, what more relevant stuff do you have? We're not going through these hundred pages of things that you gave me if they don't relate to what the issue is here. Let's go, what have you got? What have you got next?" At that point, Friso said he would

"stop there[.]" Friso rested his case, and Bennett moved for a directed verdict, which the circuit court denied.

¶13 The LLC called Bennett to testify on its behalf, during which he emphasized that: (1) it was Friso's decision to complete the job in one week; (2) the LLC thought the job would involve only painting, but that the job changed when Friso brought the car in a condition that required significant cleaning; (3) the LLC spent Monday, Tuesday, and half of Wednesday vacuuming and blowing it out and that at that point, it had to "start wiping it down" and "masking it up"; (4) the painter spent a very long day on Thursday spraying the primer and the paint to get the car done by the five-day deadline; and (5) Friso was made aware of these issues, was present on that Tuesday, and was "in constant phone contact" throughout the week regarding the car. Bennett admitted that the paint job was not perfect but said that "was caused by a time crunch" "to get all the painting done in one day" because the car came in needing to be cleaned, which he was not expecting.

¶14 On cross-examination, Friso tried to make the point that the LLC really only worked on the car for four and one-half days instead of five and asked Bennett if he would have done anything different if he had had more time and why Bennett had not called him to ask for additional time. Most of these questions (along with many of his other questions), however, were either objected to as not relevant, asked and answered, or argumentative, and the circuit court largely sustained those objections. Further, the circuit court, which was clearly frustrated with Friso, at one point stated:

> I'm going to start looking for a day for you all to come
> back again if we don't get this done.

> Mr. Friso, I sustained the objection on relevance. Let's go on with the next question. You're arguing and restating everything I let you ask him initially. So[,] let's just go to something new, something different. He had a five-minute direct examination and you ha[ve] already exceeded it with your questions, which are argumentative and repetitive of what you've already asked him. You've made a very clear record here.

¶15 The LLC did not call any witnesses aside from Bennett, and when the circuit court asked Friso if he had any rebuttal, he responded that he was "pretty much numb right now," asked the court to review the photographs and other evidence he had provided, and explained that he had owned "this car since high school." Friso did not mention WIS. ADMIN. CODE ch. ATCP 132, let alone argue to the court that the LLC had violated its provisions.

¶16 Following defense counsel's closing argument, the circuit court made the following findings: (1) based on the invoice/work order and testimony, Friso gave the LLC a five-day window to complete the job; (2) there was no warranty; (3) the contract was for painting only; (4) the car was brought to the LLC "dirty," and the residue had to be removed before it could be painted, which took three days; (5) had the car been brought in clean, the LLC could have done multiple coats of paint; and (6) Bennett was more credible because Friso initially testified that he was trying to recover money he had paid the LLC for which he later admitted he had already been refunded. Based on these findings, the court concluded Friso failed to meet his burden of proof and dismissed the case with prejudice on the merits. Friso appeals.

## II. DISCUSSION

¶17 As best as this court can tell, Friso believes the circuit court erred because it allegedly would not let him argue that the LLC violated provision in the

ATCP and because it made what Friso believes to be credibility errors in assessing the witnesses. In support of these assertions, Friso points to a text message and a transcript from a recorded conversation he says he filed with the court but that he did not get to introduce as evidence at trial that he says would have impacted the circuit court's credibility determination.

¶18 On appeal, this court is bound by the applicable standards of review and rules governing reversals and new trial requests. First, an appellant bears the burden to demonstrate how the circuit court erred. *Gaethke v. Pozder*, 2017 WI App 38, ¶36, 376 Wis. 2d 448, 899 N.W.2d 381. While this court recognizes that Friso appears pro se, he nevertheless must abide by the same rules as attorneys. *See Waushara County v. Graf*, 166 Wis. 2d 442, 452, 480 N.W.2d 16 (1992). This court "review[s] a circuit court's decision to admit or exclude evidence" for an erroneous exercise of discretion. *Martindale v. Ripp*, 2001 WI 113, ¶28, 246 Wis. 2d 67, 629 N.W.2d 698. Under this standard, "this court will uphold a decision to admit or exclude evidence if the circuit court examined the relevant facts, applied a proper legal standard, and, using a demonstrated rational process, reached a reasonable conclusion." *Id.*

¶19 Second, this court does not have the opportunity to see or hear the testimony witnesses give at trial; rather, this court can only review the written trial transcript. Accordingly, this court defers to the circuit court's credibility determinations. *See Cogswell v. Robertshaw Controls Co.*, 87 Wis. 2d 243, 250, 274 N.W.2d 647 (1979) ("the trial judge is the ultimate arbiter of the credibility of the witnesses"). This court's appellate functions do not include weighing the credibility of the various witnesses. *See Lang v. Lowe*, 2012 WI App 94, ¶16, 344 Wis. 2d 49, 820 N.W.2d 494.

¶20 Third, this court upholds factual findings unless they are clearly erroneous, i.e., if the findings are "'against the great weight and clear preponderance of the evidence.'" *State v. Arias*, 2008 WI 84, ¶12, 311 Wis. 2d 358, 752 N.W.2d 748 (citation omitted). "[A] factual finding is not clearly erroneous merely because a different fact-finder could draw different inferences from the record." *State v. Wenk*, 2001 WI App 268, ¶8, 248 Wis. 2d 714, 637 N.W.2d 417. Thus, "[w]here multiple inferences are possible from credible evidence, we must accept those drawn by the trial court." *State v. Lopez*, 173 Wis. 2d 724, 729, 496 N.W.2d 617 (Ct. App. 1992).

¶21 Finally, "a party must raise and argue an issue with some prominence to allow the trial court to address the issue and make a ruling." *State v. Ledger*, 175 Wis. 2d 116, 135, 499 N.W.2d 198 (Ct. App. 1993). If the party fails to do so, this court deems the issue abandoned or forfeited and will not address the issue on appeal. *See id.*

### A. ATCP Violations

¶22 Friso argues on appeal that the LLC violated a number of WIS. ADMIN. CODE ch. ATCP 132 provisions and that the circuit court erroneously prevented him from presenting these at trial. This court has reviewed the entire trial transcript and found only one reference to the ATCP, which occurred when Friso began questioning Bennett about the ATCP's provisions. At that point, however, the LLC's counsel objected, and the circuit court, after sustaining the objection, explained to Friso that he could not ask Bennett "legal questions" or argue with him. Both of the circuit court's statements are correct as a lay witness cannot answer legal questions as part of their testimony, and the questioner—here Friso representing himself—cannot argue with a testifying witness. Rather, Friso

may only ask questions about the facts of the case of which Bennett had personal knowledge. *See* WIS. STAT. § 906.02.

¶23 Although it sustained defense counsel's objection when Friso began questioning Bennett about the ATCP, the circuit court did *not* otherwise prohibit him from asking Bennett questions that may have supported an argument that the transaction violated WIS. ADMIN. CODE ch. ATCP 132's provisions. Rather, it only prohibited Friso from asking Bennett about what the ATCP says or requires. Friso, however, chose not to mention the ATCP again.[9] For example, at the close of evidence, Friso did not argue that there were ATCP violations, and he also did not request that the court find that the LLC violated the ATCP. Accordingly, this court concludes that Friso abandoned any claim under the ATCP at the trial, and this court cannot address it on appeal.[10]

### B. New Trial

¶24 Friso also seeks a new trial, first alleging that a text message from Bennett referencing a two-week time period related to the job would have

---

[9] This court recognizes that Friso asserts his reason for *not* mentioning the ATCP violations again was because he was concerned it would anger the circuit court, and he was scared to do so. This court cannot reverse on that basis. A litigant must raise an issue in the circuit court with prominence to preserve any objection to an alleged circuit court error. *See* ***State v. Ledger***, 175 Wis. 2d 116, 135, 499 N.W.2d 198 (Ct. App. 1993). Friso has forfeited this challenge on appeal because he failed to make this argument before the circuit court. *See* ***Schonscheck v. Paccar, Inc.***, 2003 WI App 79, ¶¶10-11, 261 Wis. 2d 769, 661 N.W.2d 476.

[10] Friso also relies on an unpublished opinion from this court, ***Eastman v. Bennett***, No. 2006AP626, unpublished slip op. (WI App May 15, 2007), arguing that because Bennett violated WIS. ADMIN. CODE ch. ATCP 132's provisions in that case, the LLC should be found to have violated the same in his case. That case is not controlling here as each case is based upon the individual facts and arguments presented at the respective trials. Moreover, Friso's citation to ***Eastman***, which was issued in 2007, violates the rules of appellate procedure. *See* WIS. STAT. RULE 809.23(3)(b) (allowing citation to unpublished opinions issued on or after July 1, 2009).

impacted the circuit court's credibility finding, and then second, alleging that he had submitted numerous exhibits that ultimately were not admitted into evidence. As to the latter, he apparently faults the circuit court for requiring him to testify and present his case from the witness stand instead of allowing him to present his case from the counsel table,[11] and he also claims that the circuit court's demeanor toward him made him feel rushed and caused him to forget to introduce the text message and other evidence/exhibits.

¶25    A party may move for a new trial pursuant to WIS. STAT. § 805.15(1), and § 805.15(3) provides that a circuit court "shall" grant the motion upon a finding that the following four factors are met:

> (a) The evidence has come to the moving party's notice after trial; and
>
> (b) The moving party's failure to discover the evidence earlier did not arise from lack of diligence in seeking to discover it; and
>
> (c) The evidence is material and not cumulative; and
>
> (d) The new evidence would probably change the result.

It is undisputed here that the first factor is not met with respect to the text message or any of the other documents Friso did not introduce at trial because they were known to him at the time of trial—he did not learn of them only *after* the trial, which § 805.15(3)(a) requires.[12]    Consequently, while this court certainly understands that Friso disagrees with the circuit court's credibility determination and believes that it may have reached a different conclusion had it been aware of

---

[11] The Record reflects, however, that the circuit court did allow Friso to retrieve documents from the counsel table during the course of his testimony.

[12] This also applies to the *Eastman* case he claimed was new evidence.

these documents, Friso had this information available to him at the time of trial, and it was his burden to introduce evidence at the trial that he believed would convince the circuit court that his version of what occurred was the truth. The circuit court, which saw and heard both Friso's and Bennett's respective versions of the facts, ultimately believed Bennett, and Friso has not presented anything in his briefs to convince this court that the circuit court's credibility findings were against the great weight and clear preponderance of the evidence admitted at trial.

¶26 Finally, this court cannot grant a new trial on the basis that Friso became flustered by the circuit court's pressure to complete the case without "repeating and repeating and arguing" with the witness. The circuit court is allowed to control the mode and operation of the presentation of the witnesses. *See* WIS. STAT. § 906.11. This statute provides:

> **(1)** CONTROL BY JUDGE. The judge shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to do all of the following:
>
> (a) Make the interrogation and presentation effective for the ascertainment of the truth.
>
> (b) Avoid needless consumption of time.
>
> (c) Protect witnesses from harassment or undue embarrassment.
>
> **(2)** SCOPE OF CROSS-EXAMINATION. A witness may be cross-examined on any matter relevant to any issue in the case, including credibility. In the interests of justice, the judge may limit cross-examination with respect to matters not testified to on direct examination.
>
> **(3)** LEADING QUESTIONS. Leading questions should not be used on the direct examination of a witness except as may be necessary to develop the witness's testimony. Ordinarily leading questions should be permitted on cross-examination. In civil cases, a party is entitled to call an adverse party or witness identified with the adverse party and interrogate by leading questions.

13

¶27    Friso has failed to convince this court that the circuit court committed reversible error. Although it appears Friso was intimidated by the circuit court's control during the trial, he has failed to present this court with any basis upon which reversing the order or ordering a new trial is warranted.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

14